Donald L. BLINZINGER, in his capacity as Administrator of the Indiana State Department of Public Welfare, Lisa A. Seyfried and Else Thomas, on behalf of themselves and all other persons similarly situated, Plaintiffs–Appellants,

v.

Richard E. LYNG, in his capacity as United States Secretary of Agriculture; Robert Leard, in his capacity as Administrator of United States Food and Nutrition Service; Virgil Conrad, in his capacity as Deputy Administrator of United States Food and Nutrition Service; Dustan Van Vleet, in his capacity as Regional Director of Family Nutrition Program, USDA; Monroe Woods, in his capacity as Regional Administrator of Food and Nutrition Service, USDA; and United States Department of Agriculture, Defendants–Appellees.

Nos. 86–2674, 86–2698.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1987.

Decided Nov. 4, 1987.

As Amended Nov. 9, 1987.

Donald R. Lundberg, Leg. Ser. Organization of Indiana, Inc., Indianapolis, Ind., for plaintiffs-appellants.

Sharon L. Reich, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellees.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The Federal Food Stamp Act of 1977, as amended by the Food Security Act of 1985, 7 U.S.C. § 2014, provides that income (for the purpose of calculating a person's entitlement to participation in the food stamp program) does not include a benefit which is in a form other than money payable directly to a household. An exception to this rule provides that money paid to a third party on behalf of a needy household *is* income if it is paid in lieu of a benefit payable to the household under a state or local general assistance program. In this case, we must determine whether the Secretary of Agriculture's policy of treating Indiana's poor relief benefits—paid to third-party vendors who in turn provide families with certain goods and/or services —as income for food stamp calculation purposes is consistent with a reasonable interpretation of the Act. We affirm the decision of the district court.

## I

Indiana's "poor relief" program is administered at the local level by Township trustees pursuant to state-wide guidelines and is designed to provide general assistance to indigent families. Poor relief is provided by these Indiana townships for a variety of purposes: it ensures that families obtain adequate housing, utilities, food, medical care, clothing, school textbooks and the like. I.C. § 12–2–1–10. The unique aspect of the program (although other states such as Illinois have similar programs) is that under Indiana law, the assistance cannot be paid in cash directly to the needy household. Instead, the particular good or service itself is provided directly to the family by a local vendor.[1]

In contrast to this local program, the food-stamp program[2] is administered at the federal level through the Department of Agriculture, which acts in cooperation with state agencies. The amount of food stamps a family receives, while dependent upon a variety of factors, depends in particular on the income in the household. Other factors being equal, households with a higher income will receive fewer monthly food coupons. *See* 7 U.S.C. § 2017(a).

Two of the recipients of food stamps[3], six township trustees, and the state of Indiana commenced this action in an attempt to preclude the federal government from including the Indiana benefits received under the "poor relief" program in their income calculations. At the time this action was initiated, the Food Stamp Act of 1977 and its implementing regulations contained an all-encompassing definition of income as "all income from whatever

---

1. Plaintiffs complaint describes in detail the system's operation: the indigent person or family must first petition the township for assistance with a specific need, for instance, housing. If the family meets the state's basic eligibility requirements, the township may provide the housing directly to the family; but more frequently it provides the family with a voucher stating that the township will pay the designated vendor a specific amount for the good or service requested. The family may then exchange the voucher for the specific good or service. After the good or service has been provided, the recipient and the vendor so attest on the voucher, which is then returned by the vendor to the township. The township later remits payment to the vendor.

   Under this system, the recipient family never receives cash; moreover, they may not receive assistance in a form other than that specified by the voucher. It is also not a negotiable instrument—the family cannot sell it and turn the housing voucher into cash.

2. In 1964 Congress established the Federal Food Stamp Program, which is administered by the United States Department of Agriculture, in order to "raise levels of nutrition among low-income households." Food Stamp Act of 1964, PUB.L. No. 88–525 § 1, 78 STAT. 703 (1964), as amended and codified, 7 U.S.C. § 2011, *et seq.* (now the Food Stamp Act of 1977, as amended). Under the Act, eligible households in participating states are entitled to obtain coupons that can be used to purchase food at retail stores. 7 U.S.C. § 2013(a). The Act reposes broad discretion in the Secretary of Agriculture to issue regulations necessary for efficient administration of the food stamp program, and to define income and resource eligibility standards. *See Id.* §§ 2013(c), 2014(b); *Knebel v. Hein*, 429 U.S.

288, 292–93, 97 S.Ct. 549, 552–53, 50 L.Ed.2d 485 (1977). Pursuant to this grant of authority, the Secretary has promulgated basic income and resource eligibility standards. *See* 7 C.F.R. §§ 273.8–273.10.

   A household's eligibility to participate in the food stamp programs is determined by calculating the income resources available to the household. 7 U.S.C. § 2014. The Food Stamp Act excludes certain specific types of income for purposes of determining food stamp eligibility and level of benefits, but otherwise defines income as including "all income from whatever source." *Id.,* § 2014(d).

3. Plaintiff Lisa A. Seyfried is the mother of three children and receives $316/month under the Aid to Families with Dependent Children program for the support of herself and her children. She also receives $237/month worth of food stamps. Complaint at ¶ 69. Ms. Seyfried has had to apply in the past for poor relief assistance through her township trustee to assist with the payment of some of her utility bills. Complaint at ¶ 71.

   Plaintiff Else Thomas is unemployed and has been without a regular source of income since early 1983. Complaint at ¶ 75. Ms. Thomas receives $79 worth of food stamps each month. Complaint at ¶ 76. Due to her lack of income, Ms. Thomas has had to rely upon poor relief assistance from her township trustee to pay for virtually all of her necessities of life, except for food, which she obtains through food stamps, and electric utility, which is paid by a low-income utility assistance program. The regularly recurring poor relief assistance Ms. Thomas has received includes assistance for rent, prescription medications, medical care and non-food household necessities. Complaint at ¶ 77.

source," 7 U.S.C. § 2014(d); 7 C.F.R. § 273.9(b), including "a public assistance grant to which a household is legally entitled." 7 C.F.R. § 273.9(c)(1)(iii). The Act, on the other hand, also contained a provision that excluded from income "... any gain or benefit which is not in the form of money payable directly to a household...." 7 U.S.C. § 2014(d)(1). Still, because other types of income—such as general assistance payments to vendors—are used to pay for a family's ordinary living expenses, the Secretary of Agriculture determined that *all* general assistance payments should be treated as "income" under the Food Stamp Act.

At least two lawsuits other than the one at hand challenged the Secretary's interpretation.[4] While these lawsuits were pending, Congress drafted the Food Security Act of 1985, which included an amendment classified by both the House and Senate as "a clarifying provision." *See* S.Rep. No. 145, 99th Congress, 1st Sessions, 234 (Sept. 30, 1985), reprinted in 1985 *U.S. Code Cong. & Admin.News* 1676, 1900; H.R. Rep. No. 271, Part 1, 99th Congress, 1st Session, 310 (Sept. 13, 1985), reprinted in 1985 *U.S. Code Cong. & Admin.News* 1103, 1414. The amendment provides, in pertinent part:

> "Assistance provided to a third party on behalf of the household by a state or local government shall be considered money payable directly to the household if the assistance is provided in lieu of ... (B) a benefit payable to the household for living expenses under—(i) a state or local general assistance program; or (ii) another basic assistance program comparable to general assistance (as determined by the Secretary)."

7 U.S.C. § 2014(k). The Senate report accompanying the Act explains that Congress wrote the clarifying provision to "assure that the federal government's position is upheld in the pending lawsuits." S.Rep. No. 145 at 234.

Based upon this intervening legislation, the government moved to dismiss for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The government maintained, *inter alia*, that the clarifying amendment demonstrates the reasonableness of the Secretary's policy. The district court granted the motion, and this appeal followed.

## II

We begin with a review of the standards that guide our analysis. The first is well known: because the district court ruled upon a motion to dismiss, we must assume that the allegations in the complaint are true and view them, along with the reasonable inferences that may be drawn therefrom, in the light most favorable to the plaintiffs. *Doe on behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411, 414 (7th Cir.1986); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985). Our resolution of this appeal does not require a detailed factual discussion. Instead, the reasonableness of the Secretary's position presents a question of law, which we review *de novo*. *See Thornburgh v. American College of Obstetricians*, 476 U.S. 747, 106 S.Ct. 2169, 2177, 90 L.Ed.2d 779 (1986).

Nevertheless, the other standard applicable to this case requires us to accord a considerable level of deference to the Secretary's interpretation of the Act's definition of "income." *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1977). This is especially true where an administrative practice "involved a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the

---

4. Illinois and Connecticut each have townships that provide general assistance solely in the form of third-party vendor payments, and lawsuits have been brought in both states under the pre-amendment Act challenging the Secretary's policy of including those vendor payments as income. The district court in Connecticut analyzed the pre-amendment Act and found that the Secretary's policy was consistent with the Act and the implementing regulations even before the Act was amended on December 23, 1985. *See Zazulak v. Heintz*, N-84-667 (D.Conn. Dec. 20, 1985) [available on Westlaw, 1987 WL 28152]. As of the oral argument date, the Illinois case remains pending. *Stout v. Coler*, No. 84-C-20205 (N.D.Ill.).

parts work efficiently and smoothly while they are yet untried and new." *Id.* (quoting *Norwegian Nitrogen Products Company v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933). Still, the Secretary's ruling can neither be arbitrary, nor capricious, nor an abuse of discretion, nor otherwise contrary to law. *See Internal Revenue Service v. Federal Labor Relations Authority*, 717 F.2d 1174, 1177 (7th Cir.1983) (Flaum, J. concurring). Applying these principles, we must determine whether or not the Secretary's interpretation is both reasonable and consistent with the Act's legislative history; if it is, the level of deference required by *Zenith* controls the outcome of this case.

As the appellants correctly note, the starting point for any inquiry into congressional intent is the statute itself; if it is clear on its face, there is no need to resort to outside sources for its meaning. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The government admits that at the time this action was filed, there arguably was an ambiguity in the Act. Initially, the Act (and its implementing regulations) contained an all-encompassing definition of income as "all income from whatever source," 7 U.S.C. § 2014(d); 7 C.F.R. § 273.9(b), including "a public assistance grant to which a household is legally entitled." 7 C.F.R. § 273.9(c)(1)(iii). It also contained a provision excluding from income "... any gain or benefit which is not in the form of money payable directly to a household...." 7 U.S.C. § 2014(d)(1). The ambiguity is apparent: what if a public assistance grant (which *is* income) is not in the form of money payable directly to the household, i.e., to a third party (which is *not* income)?

The so-called "clarifying" amendment was intended to answer the question. It provides, in pertinent part:

"(k) ... [A]ssistance provided to a third party on behalf of a household by a state or local government shall be considered money payable directly to the household if the assistance is provided *in lieu of* ... (B) a benefit payable to the household for living expenses under—(i) a state or local general assistance program; or (ii) another basic assistance program comparable to general assistance (as determined by the Secretary)."

7 U.S.C. § 2014(k) (emphasis added). The district court held that under subsection (k), assistance provided by the township to a third party on behalf of the household constitutes income if it is paid "in lieu of" or "instead of" a direct payment to the household. Because payments to third parties under Indiana's poor relief program are in lieu of direct payments to a household, the court concluded that the assistance must be treated as income.

The district court's interpretation squares with both the statutory language and its legislative history. The Senate report accompanying P.L. 99–198 explains that the amendment was enacted specifically with the idea of approving the Secretary's practice of treating all assistance payments to third parties as income:

"The Committee has included this provision to help assure that the Federal Government's position is upheld and congressional intent is served.

\*    \*    \*    \*    \*    \*

In some cases, general assistance may be provided as third-party payments only, with no payments going directly to households. *Under the Committee's provision, none of these distinctions would matter*, since any governmental payment made to the provider of goods or services on behalf of a household (in lieu of a payment made directly to the household) would be included as income unless specifically excluded by regulations promulgated under the authority provided to the Secretary.

The provision will reinforce Congress' historical intent that payment from government assistance programs be included as income regardless of their form and insure equity between groups of individuals who receive assistance in various forms."

S.Rep. No. 145 at 233–34, 1985 U.S.Code Cong. & Admin.News at 1899, 1900 (em-

phasis added). Despite this clear statement of congressional intent, the appellants maintain that the statutory phrase "provided in lieu of a benefit payable to the household" does not apply to Indiana's poor relief program. Appellants argue, *inter alia*, that Indiana's poor relief aid cannot be treated as "assistance provided to a third-party on behalf of a household ... *in lieu of* ... a benefit payable to the household for living expenses," 7 U.S.C. § 2014(k) (emphasis added), because Indiana households have never received direct cash payments as general assistance. Their construction would limit the statutory exception to those states whose programs employ third-party payments *in addition* to their ordinary direct cash payments. In such states, they argue, payments to third parties are in fact a substitute for (and hence, "in lieu of") their normal procedure of paying households directly in cash. Because Indiana has never provided assistance directly, they contend that their poor relief aid is not a substitute for direct cash payments.

In our opinion, appellant's construction of § 2014(k) is unduly restrictive. "In lieu of" is defined as "in place of; instead of." *American Heritage Dictionary* 728 (2nd ed. 1982). The plain meaning of the phrase does not support appellants' view that subsection (k) applies only to those states that actually substitute third-party payments for certain pre-existing direct cash payments. Instead, the phrase can reasonably be interpreted to encompass third-party payments that perform the same function as direct cash payments and which would otherwise be paid in cash to the needy household. Therefore, because the Secretary's construction of subsection (k) fits within the ordinary meaning of the phrase "in lieu of," it meets the test of reasonableness set forth in *Zenith, supra.*[5]

Moreover, there is no support in the legislative history for the construction proposed by appellants. In fact, their reading of the provision that subsection (k) applies only to states that substitute third-party payments for direct cash payments would lead to the very result that Congress expressly sought to avoid when it enacted the amendment in question.

Under the appellant's interpretation, a state that provided needy families with some direct cash assistance would treat *all* general assistance as income regardless of its form; while a state that provided its families with third-party payments only, would not treat that assistance as income. Were we to adopt this reasoning, Indiana residents would receive a larger share of food stamp benefits than similarly situated applicants in other states. This is the problem Congress sought to avoid, as the Senate report establishes: "[t]he provision will ... insure equity between groups of individuals who receive assistance in varying forms." S.Rep. No. 145 at 234, 1985 U.S. Code Cong. & Admin.News at 1900.[6] Con-

---

**5.** Appellants also contend that poor relief is analogous to in-kind assistance which the Food Stamp Act excludes from income calculations. The Act, however, specifically distinguishes "in-kind" assistance from "vendor payments," using the former to refer to monetary payments made to third parties on behalf of the household; and the latter to refer to non-monetary benefits received by the household directly. *See* H.R.Rep. No. 464, 95th Congress, 1st Session 30, reprinted in *1977 U.S.Code Cong. & Admin.News* 1704, 1978. The Secretary's determination that Indiana's poor relief does not constitute in-kind benefits clearly comports with this distinction. We therefore reject appellants' suggested analogy.

Appellants' brief, in an attempt to demonstrate that Congress intended to exclude vendor payments from income calculation, also engages in a lengthy analysis of the pre-amendment statute and regulations. Much of that argument is irrelevant given the legislative history accompanying the amendment itself. Moreover, appellants' citations lend *support* to the government's position since that history reveals that the amendment was passed in order to clarify any prior ambiguities, and to authorize the Secretary's current policy.

**6.** At oral argument counsel for the appellant noted that in Illinois and Connecticut, local trustees have the discretion to award direct cash payments, whereas in Indiana, assistance is available only through vendor payments. Counsel maintained that Congress recognized this distinction when it amended the statute in 1985 and intended only the former situation to constitute income for food stamp calculation purposes. However, as previously noted, the legislative history of the 1985 amendment was specifically designed to do away with such distinctions and to insure nationwide uniformity.

gress's desire to insure nationwide uniformity in its food stamp eligibility requirements supports the Secretary's interpretation that all general assistance payments, regardless of their form, be treated as income.

Finally, appellants maintain that treating vendor payments as income would unfairly decrease the dollar value purchasing power of food stamps available to a household without giving the household any choice as to the form of assistance it receives. As the Secretary points out, while Indiana poor relief recipients lose some control over the purpose for which their assistance may be used, direct vendor payments allow a household's funds to be used for other purposes, including the purchase of food. In fact, the extent to which a recipient "controls" the form of his assistance has been rejected by Congress as the operative consideration in defining income. *See Knebel v. Hein*, 429 U.S. 288, 295–96, 97 S.Ct. 549, 554, 50 L.Ed.2d 485 (1977) (recognizing that third-party payments give a household greater food-purchasing power than another household which receives no vendor payments but incurs similar expenses); H.R. Rep. No. 464 at 27, 1985 U.S.Code Cong. & Admin.News at 2004.[7] The mere fact that Indiana chooses to funnel its general assistance payments to needy households' creditors, rather than allowing beneficiary's to budget the assistance themselves, does not, in our view, require the federal government to extend that state preferential treatment under the federal food stamp program.

Where to strike the balance between the policies involved in determining whether to provide payment to vendors or to provide payments directly to a household is more properly a matter for the legislature, not for the Court. State legislatures are knowledgeable of the needs and problems of the poor within their states and are better equipped to make the necessary policy decisions in this area as the legislative process, by its very nature, allows all interested parties, state, local governmental representatives, economists, social workers, food stamp recipients, etc., to present their respective views before proper legislative committees. Thereafter, the committees formulate the policy and forward the proposed law to the full legislative body who in turn engage in a thorough debate of the subject matter before coming to a reasoned conclusion. In our system of checks and balances, we the independent judiciary lack both the time and the necessary tools to achieve this end. Therefore, our duty is to merely decide on the constitutionality of the legislation and/or the reasonableness and compliance of the law with congressional intent. We have reviewed the facts and law applicable thereto and hold that because the Secretary's interpretation of the Act, treating *all* general assistance payments as income regardless of their form, is both reasonable and in compliance with Congressional intent, we must defer to that interpretation of legislative judgment.

We affirm.

---

S.Rep. No. 145 at 233–34, 1985 U.S.Code Cong. & Admin.News at 1899, 1900. *See also Zazulak, supra* note 4.

**7.** Relevant portions of the House report state as follows:

"The committee ... views its broad-guaged definition as rational and equitable, since it intends to measure income as broadley [sic] as possible to be fair to all recipients as well as to the tax-paying public and not simply by reference to purchasing power available for food. A household member's travel allowance that is not reimbursement for expenses is as much income from this point of view as wages earned to cover commuting costs regardless of whether the allowance or the wages can practically be employed to pay for needed food."