**Mildred S. RUHE, Hester Hembry, and Irene O'Brien, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**John BLOCK,* in his capacity as Secretary of the United States Department of Agriculture and William L. Lukhard, in his capacity as Commissioner of the Commonwealth of Virginia, Department of Welfare, Defendants.**

Civ. A. No. 80–1161–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Feb. 9, 1981.

---

* This action was originally filed with Robert S. Bergland named as a defendant. Because of the change in Administrations, the court has substituted Secretary Block as a defendant pursuant to Rule 25(d)(1), Fed.R.Civ.P.

Charles P. Sabatino, Legal Aid, Arlington, Va., for plaintiffs.

John A. Rupp, Asst. Atty. Gen., Richmond, Va., for defendant Lukhard.

George P. Williams, Asst. U. S. Atty., Alexandria, Va., for defendant Block.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

### I. Factual Setting

This action challenging 7 C.F.R. 273.-9(c)(1) (1980), a regulation promulgated by the Department of Agriculture regarding eligibility for and allotment of food stamps under the Food Stamp Program and the corresponding state regulation, has come before the court on a stipulation of issues and facts. Given this stipulation, this court accepts the following facts as true.

Plaintiff, Mildred S. Ruhe is an 86 year old citizen of the United States and a resident of Arlington County, Virginia. Plaintiff Hester Hembry is a 32 year old, disabled citizen of the United States residing in Arlington County, Virginia. Plaintiff Irene O'Brien is a 75 year old citizen of the United States and a resident of Arlington County, Virginia. All are participants in both the Food Stamp Program and the Arlington County Housing Expense Relief Program.

Defendant Block is Secretary of the United States Department of Agriculture (hereinafter "USDA") and is ultimately responsible for the operation of the Food Stamp Program throughout the United States. Defendant Lukhard is Commissioner of the Virginia Department of Welfare and is responsible for the operation of the Food Stamp Program within the state of Virginia.

The Department of Agriculture, pursuant to the Food Stamp Act of 1964, as amended, 7 U.S.C.A. § 2011–27, instituted a Food Stamp Program. The Act was comprehensively revised and signed into law in September 1977, Pub.L.No.95–113 (1977), 91 Stat. 958 (hereinafter "Food Stamp Act of 1977"), and was implemented by regulations effective October 17, 1978. The purpose of the program is set forth at 7 U.S.C.A. § 2011 (1980 Supp.). The program retains the following basic characteristics.

Assistance is provided by issuing food stamps, which directly increase the recipient's food purchasing power. These stamps may be used to purchase food at grocery stores authorized by USDA. 7 U.S.C.A. § 2013(a) and (c) (1980 Supp.). In administering the Food Stamp Program, the federal government, through USDA, pays 100 percent of the program's benefits and 50 percent or more of its administrative expenses. 7 U.S.C.A. § 2025(a) and (c) (1980 Supp.). On the state and local levels, state agencies, usually those responsible for public assistance programs, implement and administer the program and pay the remaining percent of the administrative expenses. 7 U.S.C.A. § 2012(n) and 2025(a) and (c) (1980 Supp.). The state agencies' responsibilities include the certification of applicant households and the issuance of coupon allotments to eligible households. 7 U.S.C.A. § 2020(a) (1980 Supp.). Eligibility for the program is based on current need according to household size and national income and resource standards established by the Secretary of USDA. 7 U.S.C.A. § 2014(b) (1980 Supp.). The state agencies must submit plans of operation to USDA which they agree to certify applicant households and issue coupons in accordance with all of the standards established by the Secretary of Agriculture. 7 U.S.C.A. § 2020(d) (1980 Supp.).

The Virginia Department of Welfare has submitted a state plan to USDA in which it has specified the manner in which it would administer the Food Stamp Program on a state level in Virginia. In that plan it agreed, among other things, to administer the program in accordance with the applicable federal laws and regulations.

As authorized to do so by Va.Code Ann. § 63.1–51 (1980 Repl.Vol.), Arlington County amended Chapter 44 of the Arlington County Code in 1974 and established the present Housing Expense Relief Program for Needy Persons residing in Arlington County. This program is funded entirely

with County money and administered by the Arlington County Commissioner of Revenue.

The Arlington County Program provides monthly housing expense subsidies to aged or disabled persons and to needy working families, if such persons or families are not receiving general assistance and if they meet certain income and net worth criteria.[1] As of November 1980, there were 959 households in Arlington County receiving funds under this program. The amount of the monthly cash subsidy depends on family size, income, and the amount of the participants' annual rent, or for homeowners, their annual rent equivalent. The monthly subsidy is paid directly by the County to the program participant and not to the landlord or mortgagee of the participant.

In addition to this local program, there are federal housing relief programs in operation in Arlington County. The primary federal housing expense relief program in the County is the "Section 8" program. The Section 8 Housing Assistance Payments Program was established by the Housing and Community Development Act of 1974. Pub.L.No. 93–383, Aug. 22, 1974, 88 Stat. 633. Under the Section 8 program, rent assistance is provided on behalf of eligible low and moderate income families. A Section 8 subsidy enables an individual or family to reside in privately owned and operated housing, while paying not more than 25% of their annual income toward rent. 12 U.S.C.A. § 1701s(d) (1980). The remainder is made up by federally funded rent subsidies paid on a monthly basis directly to the landlords.

In Arlington, Virginia, approximately 468 households are individually subsidized by the Section 8 program. In addition, three independently operated retirement apartments in Arlington County provide over 700 additional units subsidized either under Section 8 or other federal subsidy programs that use the same 25 percent of income formula.

The amount of food stamps that a household receives is computed according to household size, household income, and allowable exclusions and deductions from income. Household income, under 7 U.S.C.A. § 2014(d)(1) (1980 Supp.) "shall include all income from whatever source excluding only (1) any gain or benefit which is not in the form of money payable directly to a household...." USDA Regulations, at 7 C.F.R. § 273.9(c)(1), issued pursuant to the Food Stamp Act of 1977, set forth the following allowable income exclusion:

(1) Any gain or benefit which is not in the form of money payable directly to the household, including nonmonetary or in-kind benefits, such as meals, clothing, public housing, or produce from a garden, and vendor payments. Money payments that are not payable directly to a household, but are paid to a third party for a household expense, are vendor payments and are not excludable as follows:

(i) A payment made in money on behalf of a household shall be considered a vendor payment whenever a person or organization outside of the household uses its own funds to make a direct payment to either the household's creditors or a person or organization providing a service to the household. For example, if a relative or friend, who is not a household member, pays the household's rent directly to the landlord, the payment is considered a vendor payment and is not counted as income to the household. Similarly, rent or mortgage payments made to landlords or mortgagees by the Department of Housing and Urban Development (HUD), or by the State or local housing authorities, are other examples of vendor payments and are also excluded....

(ii) Payments in money that are not made to a third party but are made directly to the household, are counted as income and are not excluded as a vendor payment, except that rent or housing

---

1. The details of the Arlington County Program are set forth in §§ 44–1 to 44–4 of the Arlington County Code. They are not set forth in this opinion since the exact terms of the program are not relevant to the decision of this case other than the fact that the money is paid directly to the program recipients.

subsidies paid to a landlord by HUD or its agents under the experimental housing allowance program in Green Bay, Wis., or South Bend, Ind., shall considered [sic] a vendor payment regardless of whether the payment is made directly to the landlord or paid to the landlord through the household.

The Virginia Department of Welfare Food Stamp Regulations at § 706C of the *Virginia Food Stamp Certification Manual*, provide in substance for the same income exclusion as the USDA Regulation.

■ Under the USDA regulations and the Virginia regulation, federal government housing subsidies, paid directly to the landlord, are excluded from a household's income for food stamp purposes. Under the same regulations, subsidies received by plaintiffs and other households under the Arlington County program are included in income for food stamp purposes. By including Arlington County Housing Expense Relief subsidies in income, defendants' regulations have the effect of reducing the plaintiffs' monthly food stamp allotment, which would not be the case if the subsidy were excluded from income for food stamp purposes.

In the experimental housing allowance programs in Green Bay, Wisconsin, and South Bend, Indiana, the housing subsidies are paid to the tenant but are not counted as income for food stamp purposes under 7 C.F.R. § 273.9(c)(1).

Plaintiff Mildred S. Ruhe is a widow who lives alone in a rented apartment. Her monthly income consists of $258.00, made up of Social Security benefits and Supplemental Security Income (SSI). In addition, she receives $35.00 in food stamps and $80.89 rent subsidy from the Arlington County program. Her monthly expenses include rent of $241.00. She lives alone in her one bedroom apartment. Her utilities plus telephone average about $35.00 per month. If she had testified she would have stated that her expenses for food, household items, clothing, medical and personal needs exceed the remainder of her income.

Because defendants' regulations require the inclusion of her Arlington County subsidy of $80.89 in her income for food stamp purposes, her current food stamp allotment is only $35.00. If the housing subsidy were not included in her income, she would receive at least $13.00 to $15.00 more per month in food stamps.

She would testify that she suffers from many physical problems and weighs only 85 pounds, and underwent a major stomach cancer operation in 1970. She is presently suffering from pernicious anemia, heart disease and emphysema. She would state that because she does not receive enough food stamps, she often has to cut back on buying foods essential to her health, thereby adversely affecting her health. She would state that if she had more food stamps, she would purchase a more nutritionally adequate diet for herself.

Plaintiff Hester Hembry is single and disabled. Her monthly income consists of $238.00 in Supplemental Security Income (SSI). In addition, she receives $20.00 per month in food stamps and $95.73 per month from the Arlington County program. She is disabled under the terms of the Social Security Act by reason of mental retardation and an emotional disorder. She is able to live independently in the community and manage her own affairs only because of the financial assistance she receives from the various government funded programs described above and because of supportive social services she receives from the Arlington County Department of Human Resources.

Her monthly expenses include rent of $176.00 plus the cost of utilities. Her November 1980 electric bill alone was $54.38 and her telephone charge for basic services was $12.46. If she had testified, she would have stated that what is left of her income and food stamps is not enough to meet her actual needs for food, clothing and other necessities.

Because of the regulations set out above her $95.73 Arlington County Relief Subsidy is included in her income for food stamp purposes, and her current food stamp allotment is only $20.00. If the housing subsidy were not included in her income, she would

receive at least $14.00 more per month in food stamps.

If she had testified in person she would have stated that because she does not receive enough food stamps, she has had to cut back on buying foods essential to her health, and that this had adversely affected her health. She would also state that if she had more food stamps, she would purchase a more nutritionally adequate diet.

Plaintiff Irene O'Brien is a 75 year old widow who lives alone in a rented, one bedroom apartment in Arlington, Virginia. Her monthly income consists of $238.00 from SSI and the only other assistance she receives is $42.00 a month worth of food stamps and $88.93 a month from the Arlington County Housing Expense Relief Program. Her rent of $238.00 was scheduled to increase to $252.00 on December 1, 1980. As for other expenses, she pays for electricity, which costs $23.00 for the month ending in October 1980 and for telephone service, which costs $12.00 per month.

If she had testified she would have stated that her expenses for food, household items, clothing, medical and personal needs exceed the remainder of her income.

Because of the regulations set out above, her rent subsidy of $88.93 is included in income for food stamp purposes and her current food stamp allotment is only $42.00. If the housing subsidy were not included in her income she would receive approximately $13.00 more per month in food stamps. If she had testified in person she would have stated that she is aged and frail and weighs only 100 pounds, that because she does not receive enough food stamps, she cannot buy all the foods she needs for an adequate diet, that her health is adversely affected by this, and that if she had more food stamps she would purchase a more nutritionally adequate diet.

The parties have set out the following issues to be decided by this court:

1. Whether 7 C.F.R. § 273.9(c)(1) is invalid because it contravenes 7 U.S.C.A. § 2014(d)(1).

2. Whether 7 C.F.R. § 273.9(c)(1) and the corresponding state regulations are invalid because they violate the equal protection clause of the Fourteenth Amendment and the equal protection component of the Fifth Amendment.

## II.  Discussion

The parties have stipulated as to the two issues to be resolved by this court, but before discussing those it is necessary to decide whether this case is properly maintained as a class action. Plaintiffs have moved that the court certify a class consisting of all persons in Arlington County, Virginia who have been, are, or will be participants in the Food Stamp Program and who, at the same time, participated in the Arlington County Housing Expense Relief Program. The exact number of people who would fit within this class definition is not known. The maximum number of class members is 959, the total number of households receiving Arlington County Housing Expense Relief in November 1980. It is not known how many of these households receive food stamps. The plaintiffs claim that the percentage is likely to be high because both the Food Stamp Program and the Housing Relief Program serve only low income persons.

In order to maintain a class action, the plaintiffs must meet the requirements of Rule 23, Fed.R.Civ.P. No class action can proceed without meeting all of the prerequisites of Rule 23(a).[2] If plaintiffs have satisfied subsection (a), then they still must meet the requirements of one of the three paragraphs under subsection (b). Plaintiffs in this case have asserted that they meet the requirements of subsection (b)(2), which provides that an action can go forward as a class action if "the party opposing the class has acted or refused to act on grounds

---

2. Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

It appears to the court that whether or not this case goes forward as a class action makes little difference. The plaintiffs have filed for injunctive and declaratory relief, which, if granted, would benefit the members of the proposed class equally as much no matter how the suit proceeds. It is the position of the defendants—the Commonwealth of Virginia and the United States Department of Agriculture—that if the requested final declaratory and injunctive relief is entered against them, the relief would be applied by them to any eligible persons in the proposed class anyway.

In the case of *Davis v. Smith*, 607 F.2d 535 (2d Cir. 1978), a case in which the plaintiffs challenged the validity of two New York state regulations on constitutional grounds and on the grounds that the regulations violated statutory rights under the Social Security Act, the Second Circuit agreed that class certification was unnecessary.

> Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification.

*Id.* at 540.

Likewise, the Fourth Circuit, in a case in which the plaintiffs charged housing discrimination by a realty company based on race, wrote:

> Since the plaintiffs could receive the same injunctive relief in their individual action as they sought by the filing of their proposed class action, class certification was unnecessary to give the plaintiffs the injunctive relief they requested through class certification, assuming the facts of the case were sufficiently flagrant to support that relief.

*Sandford v. R. L. Coleman Realty Co.*, 573 F.2d 173, 178 (4th Cir. 1978). *See also, Gray v. International Brotherhood of Electrical Workers*, 73 F.R.D. 638 (D.D.C.1977).

█ Since the plaintiffs in this action have asked for a declaratory judgment that the defendants' failure to exclude the Arlington County payments from the plaintiffs' income for purposes of computing the plaintiffs' food stamp allotment is in violation of the Food Stamp Act and the equal protection guarantees under the Fifth and Fourteenth Amendments, and for a permanent injunction restraining defendants and their successors from continuing to include the Arlington County payments in the plaintiffs' income, if this court did enter judgment in favor of the plaintiffs it would be sufficiently broad to protect the interest of potential members of the proposed class. This being the case, no purpose is served by certifying this class, and, therefore, the court has decided to deny the motion for class certification under Rule 23.

The court will next decide the case on the merits, the parties having stipulated to the facts and issues presented and having filed cross motions for summary judgment.

The statute under which the challenged regulation was drafted is 7 U.S.C.A. § 2014(d)(1) (1980 Supp.). That statute says that household income for food stamp entitlement purposes shall include "*all* income from *whatever source* excluding *only* (1) any gain or benefit which is not in the form of money payable directly to a household." (emphasis added). The language of the statute is clearly understood and the meaning easily discernible. Congress has elected in drafting this statute to use words with absolute meaning subject to no equivocation, i. e., "all income," "whatever source," "excluding only," "any gain."

█ USDA, charged with administering the Food Stamp Act, issued the challenged regulation, 7 C.F.R. § 273.9(c)(1), which set forth the income exclusions it would allow. Paragraph (1) begins with virtually the same language as the congressional statute, i. e., "[a]ny gain or benefit which is not in the form of money payable to the household." Subparagraph (ii) amplifies on the income exclusions by saying that "[p]ay-

ments in money that are not made to a third party but are made directly to a household, are counted as income and are not excluded...." The regulation would appear to match four-square with the requirements of the statute.

The plaintiffs, despite the apparent clarity of the statute and the regulation, take the position that the purpose of the Act and the legislative history would require exclusion of plaintiffs' monthly subsidies received from Arlington County for food stamp purposes. As authority for this position they cite the House Report to the Food Stamp Act in which it was written, "No rent subsidies or supplements paid or payable to third parties could be treated as income, including sums paid to households under firm instructions for their transmission to landlords." H.R.Rep.No.95-464, 95th Cong., 1st Sess. 32 (1977), reprinted in [1977] U.S.Code Cong. & Ad.News 1978, 2008. That Report went on to say:

> The most desirable approach is not to count any vendor payments as income. Federal rent supplements go directly to landlords.... Low-income families never receive or even see this money. Even if they receive [sic], they are legally bound to transmit it to the intended recipient. It is not available to them to use for food.

> \*     \*     \*     \*     \*     \*

> If housing vendor payments, such as rent supplements, were to be counted as income, nearly every family living in subsidized housing would face major reductions in their food stamp benefits. This would undercut the whole purpose of various housing acts and the Food Stamp Act by making families lose the ability to obtain a more nutritious diet simply because their landlord was receiving a subsidy payment from HUD.

*Id.* at 32, [1977] U.S.Code, Cong. & Ad.News at 2009.

The plaintiffs also refer this court to the legislative history of certain amendments to the Food Stamp Act passed by Congress in 1980. Pub.L.No. 96-249. Specifically, the plaintiffs cite the House Report to those amendments, in which it was stated that

The same treatment, excludability regardless of the route which the payment takes, should be given to rent or housing subsidies paid pursuant to special State or local rent relief programs, such as the one in existence in Arlington County, Virginia.... The Department should revise this inequity in its regulations to provide identical favorable treatment of local, State, and Federal rent relief programs.

H.R.Rep.No.96-788, 96th Cong., 2d Sess., 124-25 (1980), reprinted in [1980] U.S.Code, Cong. & Ad.News 2009, 2123-24.

It is significant to point out, however, that despite the language of the House Committee, the language of the statute on which the regulation was based was not changed by the 1980 amendment, leaving the language which this court believes to be clear and concise in the statute. If this court were to accept the plaintiffs' position it would be carving out an exception to the statute which is written in absolute terms. The Supreme Court has written that "[i]f a legislative purpose is expressed in 'plain and unambiguous language, ... the ... duty of the courts is to give effect according to its terms.'" *United States v. Rutherford*, 442 U.S. 544, 551-52, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979), quoting *United States v. Lexington Mill & Elevator Co.*, 232 U.S. 399, 409, 34 S.Ct. 337, 340, 58 L.Ed. 658 (1914). "Exceptions to clearly delineated statutes will be implied only where essential to prevent 'absurd results' or consequences obviously at variance with the policy of the enactment as a whole." *Id.* See also, *Trans-Alaska Pipeline Rate Cases,* 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d. 591 (1978).

In *Rutherford*, the Court was interpreting the language of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 321(p)(1) (1980 Supp.), reversing the lower court which had carved out an exception even though the statute applied to *"any drug"* (emphasis added). Despite the clarity of the language in the statute, however, the Court did look to the legislative history of the statute and the administrative interpretations of it to make sure that the court's literal interpretation did not produce "absurd results."

In reviewing the legislative history of the Food Stamp Act of 1977, this court has determined that Congress fully intended to give the words it wrote the exact meaning that they appear to have. In other words, if money is paid as a vendor payment and if the beneficiary of that payment could in no way divert that money to other than its intended purpose, it would be unfair to include this as income for food stamp purposes. In the House Report cited by the plaintiffs, the Committee wrote that one of the major reasons why it excluded vendor payments was because a survey of food stamp administrators which the Committee conducted showed that most administrators regarded it as unfair to count such payments as income "because in many instances the food stamp recipient never had access to the payment." H.R.Rep.No.95–464 at 31, [1977] U.S.Code, Cong. & Ad.News at 2007. And the money "is not available to them to use for food." *Id.* at 32, [1977] U.S.Code, Cong. & Ad.News at 2009. Furthermore, that Report also consistently refers to the inequitable results from including as income the equivalent rental value of "public housing."

There is nothing in the legislative history which would indicate that Congress meant anything other than what it said, i. e., that money paid directly to the recipient is to be included in income. Even if the legislative history did indicate that Congress meant something other than what it said, this court finds "[n]o mandate in logic or in case law for reliance on legislative history to reach a result *contrary* to the plain meaning of the statute particularly where that plain meaning is in no way unreasonable." *United Airlines, Inc. v. Civil Aeronautics Board*, 569 F.2d 640, 647 (D.C.Cir.1977).

As for the section of the House Report of 1980 specifically mentioning the Arlington County program, this court finds no reason to rely on that statement when the Congress did not change the meaning of the statute, especially in light of the previous interpretation put on the statute by the USDA.[3]

The plaintiffs have challenged the USDA's and the Commonwealth of Virginia's regulations administering the Food Stamp Program. The specific federal regulation, 7 C.F.R. § 273.9 was promulgated and put into effect in 1978. If the interpretation of the statute made in the regulation were incorrect, Congress has had ample time to alter the statute accordingly.

As the exhibits filed with this case show, the interpretation of the statute and the regulation's interaction with the Arlington County program has been specifically brought to the attention of Congress and the full Congress has failed to take legislative action to correct what the plaintiffs claim is a misinterpretation by USDA.

Furthermore, "the construction of a statute by those charged with its administration is entitled to substantial deference." *United States v. Rutherford*, 442 U.S. at 553, 99 S.Ct. at 2476. "Such deference is particularly appropriate where ... Congress has not acted to correct any misperception of its statutory objectives." *Id.* at 554, 99 S.Ct. at 2476.

To be sure, it may not always be realistic to infer approval of a judicial or administrative interpretation from congressional silence alone. . . . But once an agency's statutory construction has been "fully brought to the attention of the public and the Congress," and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the

---

3. This court finds instructive the passage contained in the case of *National Small Shipments v. Civil Aeronautics Board*, 618 F.2d 819, 828 (D.C.Cir.1980), in which the court wrote:

Courts in the past have been able to rely on legislative history for important insights into Congressional intent. Without implying that this is no longer the case, we note that interest groups who have failed to persuade a majority of the Congress to accept particular statutory language often are able to have inserted in the legislative history of the statute statements favorable to their position, in the hope that they can persuade a court to construe the statutory language in light of these statements. This development underscores the importance of following unambiguous statutory language absent clear contrary evidence of legislative intent.

legislative intent has been correctly discerned.

*Id.* at n. 10. *See also, National Labor Relations Board v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974).[4]

Plaintiffs also claim that under the Arlington Housing program the recipients of the funds receive "firm instructions" to pay the money received for housing expenses, and that these firm instructions are the type referred to in the House Report. The ordinance states that the payments are "for the purpose of providing funds for housing expense relief for needy persons." Arlington County Code, § 44–1 (July 17, 1974). While there is no doubt that this is the reason the money is paid to the recipients, there is no evidence before this Court that there is any kind of firm instructions or enforcement mechanism positively mandating that the money received from the County go directly to the landlords.

For the reasons stated, therefore, this court believes that the regulations challenged by the plaintiffs are not contrary to the intent of Congress in § 2014(d). At this point, however, this court points out that it is sympathetic to the plight of the recipients of the Arlington County funds and recognizes that the distinction as to who actually receives the money is an artificial one and one which works, unfortunately, to these plaintiffs' detriment. This distinction, however, is one that Congress has made and which this court cannot disturb.

■ The plaintiffs have also challenged the regulations as being in violation of the equal protection clause of the Fourteenth Amendment and the equal protection component of the Fifth Amendment to the United States Constitution. They claim that the effect of the defendants' regulations is to create a distinct class of housing subsidy recipients who do not have the same entitlement to food stamps as other similarly situated households. This class, they claim, is made up of those households who receive local monthly housing subsidies such as those provided by Arlington County.

The parties agree that the test to be applied to such a classification is the so-called "reasonable basis test." *See, e. g., Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). In that case, the Court wrote:

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Id.* at 485, 90 S.Ct. at 1161, quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911).

In *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), the Court wrote that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." This court need not conjure up speculative reasons as to why the regulation was the way it was or why the statute was written the way it was. The classification was made because Congress had expressed its intent to include in income all money which flowed into the household and which could be used to purchase food.

■ The plaintiffs claim that USDA has implicitly recognized how the money is paid

---

**4.** The plaintiffs have cited *Bell* for the proposition set forth in that case that the Court recognized "that subsequent legislation declaring the intent of an earlier statute is entitled to significant weight." 416 U.S. at 274–75, 94 S.Ct. at 1762. It is important to point out, however, that the Court does not say that such is conclusive. And, furthermore, the Court, citing *Bell,* wrote in *Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 814,

63 L.Ed.2d 36 (1980) that "while the views of subsequent Congresses cannot override the unmistakable intent of the enacting one ... such views are entitled to significant weight ... and particularly so when the precise intent of the enacting Congress is obscure." It is the view of this court that the "precise intent of the enacting Congress" which passed the Food Stamp Act was not "obscure."

to the household makes no difference by including in the challenged regulation the exceptions for the Green Bay, Wisconsin and South Bend, Indiana experimental programs. The court finds that the distinction made in those programs, which predated the regulation, is not one which does not meet the "reasonable basis test." The reason for the exclusion of those programs was set forth in 43 Fed.Reg. 18888 (May 2, 1978):

> In order to maintain a consistent policy on treatment of HUD and housing subsidies, and to avoid interfering with the results of these existing experimental projects, the regulations propose to exclude as vendor payments both the HUD housing subsidies which go directly to the landlord and the payments, in those few experimental projects, which go through the household to the landlord.

Although the cases cited above dealt with Congressional statutes, since this court has determined that the regulation correctly interprets the statute and draws the distinction which Congress itself has drawn, the application of the principles of these cases is apposite to this case.

### III. Conclusion

For the reasons stated, this court hereby denies plaintiffs' motion for class certification and for summary judgment and grants defendant Block's motion for summary judgment and defendant Lukhard's cross motion for summary judgment.

It is so ORDERED.