761 P.2d 1085

**Merrill ORR, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency, Appellee.**

**No. 1 CA–UB 490.**

Court of Appeals of Arizona, Division 1, Department A.

April 19, 1988.

Review Denied Oct. 12, 1988.

Arizona State University, ASU Law Clinic by Lyn B. McKay, Douglas A. Blaze, Tempe, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Terri Richardson, Asst. Attys. Gen., Phoenix, for appellee.

## OPINION

BROOKS, Judge.

This is an action by a food stamp recipient challenging the method used by the Arizona Department of Economic Security to calculate food stamp benefits. The sole issue in this appeal is whether utility allowance payments received from the Department of Housing and Urban Development are includable as income for the purpose of calculating food stamp benefits. Because we find that utility allowance payments are not made "for the purpose of providing energy assistance," we affirm the Arizona Department of Economic Security Appeals Board's decision that such payments are income for purposes of computing food stamp benefits.

## FACTS

In June of 1984, appellant, Merrill Orr, applied for and subsequently received food stamp benefits. In September of 1984, Arizona Department of Economic Security (DES) issued a Notice of Food Stamp Over-

payment which was amended in June of 1985. DES assessed a portion of the overpayment for Orr's failure to report receipt of utility allowance payments (UAPs) (also known as "negative rent payments") received from the Department of Housing and Urban Development (HUD) during July, August, and September of 1984 in the amount of $8.00 per month. These payments were issued through the Scottsdale Housing Authority. Orr appealed this notice to a hearing officer and received an unfavorable decision.[1] He then appealed to the DES Appeals Board which affirmed the hearing officer's decision that the UAPs were includable as income for food stamp purposes. Following a request for review, the Appeals Board affirmed its earlier decision but for reasons different from those discussed in its initial decision.

In affirming its decision upon review, the Appeals Board relied, in part, upon a DES Food Stamp Manual instruction which includes as unearned income "[n]egative rent payments (utility allowance) made directly to the household by the Department of Housing and Urban Development (HUD) or other state or local authorities." DES 70–305.03(Q). In reliance thereon, the Appeals Board found that a negative rent payment made for the purpose of providing assistance with utility bills was not the same as a payment clearly earmarked as energy assistance.

As the other basis for affirming its decision, the Appeals Board found that Orr received the UAPs directly instead of in the form of a vendor payment. The Board relied upon *Ruhe v. Block,* 507 F.Supp. 1290 (E.D.Va.1981), in which the court rejected an equal protection challenge and found a rational basis for distinguishing between benefits received directly by food stamp applicants and those paid on their behalf directly to the vendors. We granted Orr's application for leave to appeal to this court and have jurisdiction pursuant to A.R.S. § 41–1993.

### LEGISLATIVE HISTORY

In 1964, Congress passed the Food Stamp Act in order to "raise levels of nutri-tion among low income households." Pub.Law 88–525, § 2, 78 Stat. 703 (Aug. 31, 1964), *codified as amended at* 7 U.S.C. § 2011 (1982). Under the Act, the Secretary of Agriculture is authorized to administer the food stamp program and issue and promulgate regulations to that effect. 7 U.S.C. § 2013(a), (c) (1982). Section 2014 of the Act governs eligibility standards for food stamp benefits. In 1977, Congress codified the allowable exclusions and deductions when computing household income for purposes of determining food stamp eligibility and benefit levels. Pub.Law 95–113, § 1301, 91 Stat. 958, 962–64 (Sept. 29, 1977), *codified at* 7 U.S.C. § 2014(d) & (e) (Supp. I 1977). In 1980, the Food Stamp Act was amended to exclude from food stamp income "any payments or allowances made under any Federal, State or local laws for the purpose of providing energy assistance." Pub.Law 96–249, § 102, 94 Stat. 357 (May 26, 1980), *codified at* 7 U.S.C. § 2014(d)(12) (Supp. IV 1980). In 1981, this exclusion was renumbered and amended to read in its current form, excluding:

(11) any payments or allowances made under (A) any Federal law for the purpose of providing energy assistance, or (B) any State or local laws for the purpose of providing energy assistance, designated by the State or local legislative body authorizing such payments or allowances as energy assistance, and determined by the Secretary to be calculated as if provided by the State or local government involved on a seasonal basis for an aggregate period not to exceed six months in any year even if such payments or allowances (including tax credits) are not provided on a seasonal basis because it would be administratively infeasible or impracticable to do so.

Pub.Law 97–98, § 1306, 95 Stat. 1213, 1283 (Dec. 22, 1981), *codified at* 7 U.S.C. § 2014(d)(11) (Supp. V 1981).

The Section 8 Lower–Income Housing Assistance payments program was estab-

---

1. *See* A.R.S. § 41–1991, *et seq.*

lished by the Housing and Community Development Act of 1974, Pub.Law 93–383, title II, § 201(a), 88 Stat. 633, 662–66 (Aug. 22, 1974), which amended the United States Housing Act of 1937 and is now codified at 42 U.S.C. § 1437f (Supp. III, 1985). Under the Section 8 program, rent assistance is provided on behalf of eligible low and moderate income families. A Section 8 subsidy enables an individual or family to reside in privately owned and operated housing while paying not more than a specified percentage of their adjusted income toward rent. 12 U.S.C. § 1701s(d)(1982).

By definition, tenant rent is the amount payable monthly by the family as rent to the owner less any "utility allowance." 24 C.F.R. § 813.102. If all utilities (except telephone) and other housing services for an assisted unit are provided by the landlord, the tenant's total rent is equal to the regulation-specified percentage (in this case, 30%) of his HUD–defined adjusted income. 24 C.F.R. § 813.107. If, on the other hand, the cost of utilities (except telephone) and other housing services for an assisted unit is not included in the tenant rent, but is the responsibility of the family occupying the unit, an approved amount of the monthly costs of a reasonable consumption of such utilities and other services is allowed against the rent payment. This allowance is called a "utility allowance." 24 C.F.R. § 813.102. If the utility allowance for the unit exceeds the total tenant payment for the family occupying the unit, the tenant paying for the utilities and other housing services is entitled to a "utility reimbursement." *Id.* [2]

The terms "utility" and "other housing services" are undefined by either the statute or the applicable regulations. "Utility" is defined, however, in Part 900 of the HUD regulations which is inapplicable to Section 8 by its terms, *see* 24 C.F.R. 965.-471(a), and is at least instructive. There, "utility" is defined as "[e]lectricity, gas,

heating fuel, water and sewerage services, and trash and garbage collection. Telephone service is not included as a Utility." 24 C.F.R. § 965.472. It seems apparent, then, that a utility allowance payment (or utility reimbursement) can result from tenant-paid utility and housing service costs other than electricity or energy. At oral argument, counsel for Orr even conceded that if the UAP in question resulted from expenditures for "water or sewer or some other utility, it would not be deductible [from food stamp income]."

## DISCUSSION

As previously noted, the Appeals Board's affirmance of its decision upon review was based on two grounds: (1) the fact that the payment was not "clearly earmarked" as energy assistance as required by a DES Food Stamp Manual instruction, and (2) the fact that the payments were remitted directly to Orr instead of to the utility provider.

■ As to the first ground, Orr argues that the applicable federal statute and regulation contain no such "clearly identified" requirement and control over any conflicting state interpretation. DES, on the other hand, contends that the DES Food Stamp instructions and the Appeals Board's interpretation are clearly consistent with federal law and regulations.

Pursuant to the Arizona Food Stamp Manual instruction relied on by the Appeals Board, unearned income includes "[n]egative rent payments (utility allowance) made directly to the household by the Department of Housing and Urban Development (HUD) or other state or local authorities." DES 70–305.03(Q). The Board found no inconsistency between this instruction and DES 70–306.02(N), which excludes from income:

[p]ayments or allowances made under any federal law for the purposes of ener-

---

2. For example, if a family has an adjusted income of $400.00 per month (as calculated by HUD), the total tenant rent would be equal to $120.00 (30% of $400). Presuming the tenant was responsible for paying the cost of utilities (except telephone) and other housing services in the estimated amount of $127, the tenant would be entitled to a utility reimbursement in the amount of $7.00. If the tenant did not receive this utility reimbursement, his payment for rent, as a percentage of adjusted income, would be 31.75% ($127 ÷ $400 = .3175).

gy assistance, regardless of the type of payment.

1. These payments must be clearly identified as energy assistance.

A literal reading of the federal statute and regulation, however, shows an intent to subject only state and local laws to a requirement that payments thereunder be designated as energy assistance. Excluded from income under the statute are:

> any payments or allowances made under (A) any Federal law for the purpose of providing energy assistance, *or* (B) any State or local laws for the purpose of providing energy assistance, *designated by the State or local legislative body authorizing such payments or allowances as energy assistance....*

7 U.S.C. § 2014(d)(11) (emphasis added). The applicable federal regulation is consistent:

> (c) *Income Exclusions.* Only the following items shall be excluded from household income and no other income shall be excluded:
>
> ....
>
> (11) Payments or allowances made under any Federal law for the purpose of providing energy assistance. *In addition, any payments or allowances, including tax credits, under State or local law which are so designated and made for the purpose of providing energy assistance shall be excluded from consideration as income, provided that FNS has approved the exclusion of such payments or allowances.*

7 C.F.R. § 273.9 (emphasis added).

A review of the legislative history also shows that Congress rejected a "specifically designated" requirement for federal laws. *See* H.R.Conf.Rep. 377, 97th Cong., 1st Sess. 153, 217, *reprinted in* 1981 U.S. Code Cong. & Admin.News 2250, 2314. When enacting the 1981 Food Stamp Amendments, Congress intended to close a loophole which previously would have allowed a state or local agency to improperly

designate state or local welfare increases as "energy assistance" and thereby shift higher costs (increased food stamp allotments) to the federal government. 47 Fed. Reg. 40445 (1982). The Appeals Board, then, erroneously concluded that the UAPs were includable in income because such payments were not clearly identified as "energy assistance." [3]

As the other basis for affirming its decision on review, the Appeals Board found that UAPs were includable in food stamp income because the UAPs were remitted directly to Orr instead of to the utility provider. Orr argues, and DES concurs, that neither the applicable food stamp statutes nor the regulations contain language restricting the method or manner of payment. We agree.

Under 7 U.S.C. § 2014(d)(1) and 7 C.F.R. § 273.9(c)(1), "any gain or benefit which is not in the form of money payable directly to a household" (a vendor payment) is already excluded from computing household income. To construe the "energy assistance" exclusion as applicable only to vendor payments would render 7 U.S.C. § 2014(d)(1) and 7 C.F.R. § 273.9(c)(1) superfluous. Statutes are to be given, wherever possible, such effect that no clause, sentence or word is rendered superfluous, void, contradictory, or insignificant. *Ruiz v. Morton,* 462 F.2d 818, (9th Cir.1972), *aff'd,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). In order to give effect to both the "energy assistance" exclusion and the "vendor payment" exclusion, we must assume that Congress intended excludability from food stamp income payments made directly to the household for energy assistance.

▪ The Appeals Board's decision, then, was based upon an erroneous interpretation and application of the law. The Board's legal conclusions, however, are not binding on this court. *See Prebula v.*

---

**3.** Because we will later find that the Appeals Board correctly concluded that UAPs are income for purposes of computing food stamp benefits, we need not decide whether the DES

instruction impermissibly conflicts with federal statutes and regulations to the extent it imposes a "clearly identified" requirement on federal laws.

*DES,* 138 Ariz. 26, 672 P.2d 978 (App.1983). On appeal, this court views the evidence in a light most favorable to upholding the decision of the Appeals Board and will affirm that decision if it is supported by any reasonable interpretation of the record. *Id.* We have often said that we will affirm a decision which reaches the right result even for the wrong reasons. *See SRP v. Industrial Comm'n,* 126 Ariz. 196, 613 P.2d 860 (App.1980) (hearing officers, like superior court judges, should be affirmed if they reach the right legal result, even though for the wrong reason). After reviewing all relevant statutes, state and federal regulations, and legislative history, we are of the opinion that the Appeals Board properly reached the correct conclusion that UAPs are income for purposes of computing food stamp benefits, albeit for reasons different from those upon which we base our decision.

Orr insists that because he paid his electricity bill separately, and because electricity is energy, then the UAPs received had to be for the purpose of providing energy assistance. We find this logic faulty for the following reasons.

First, 7 U.S.C. § 2014(d)(11) excludes from income "payments ... made under ... any Federal law for the purpose of providing energy assistance...." The operative language here is "for the purpose of," which we construe to mean as "with the intention of." *See Black's Law Dictionary,* 773 (4th ed.1968). Orr's position would be much more tenable if the statute excluded income "from payments made under any Federal law *which provides* energy assistance." The fact that the UAPs were triggered by Orr's payment of electric bills does not necessarily mean that the UAPs were made for the purpose of providing energy assistance. The intention or purpose of the payment must be determined from the viewpoint of the payor, not of the payee. The fact that Orr perceived the UAPs to be helpful in making his electric bill payments (or so applied them) is not determinative of the purpose of the pay-

ment. As Orr conceded at oral argument, UAPs can be generated as a result of tenant payments for water, sewer, or garbage service, all of which are non-energy utilities.

The avowed purpose of the United States Housing Act of 1937 is to "remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income...." 42 U.S.C. § 1437. The HUD policy of reimbursing tenants for out-of-pocket utility costs to the extent that they push their total shelter cost over a prescribed percentage of their income is consistent with that purpose. We have not been directed to anything in the statutes or regulations that would evidence an intent on the part of HUD to make payments for the purpose of providing energy assistance.

Another reason for our determination that UAPs are includable in food stamp income results from our further review of the legislative history surrounding the enactment and subsequent amendment of the "energy assistance exclusion."

In adopting the energy assistance exclusion, it is clear that the House Committee on Agriculture was reacting to then recent legislation which had been enacted to offset low-income households' increased home energy costs. *See* H.R.Rep. 788, 96th Cong., 2nd Sess. 121–124, *reprinted in* 1980 U.S. Code Cong. & Admin.News 843, 954–957. In its report, the Committee first noted that the Interior and Related Agencies Appropriations Act of 1979, Pub.Law 96–126, *reprinted in* 1979 U.S.Code Cong. & Admin.News 954, 978, had approved the transfer of $1.2 billion to the Secretary of Health, Education, and Welfare for payment of energy grants and allowances; these allowances were specifically intended not to be considered as income or resources under any other public or publicly assisted income tested program and therefore excludable from food stamp income under 7 C.F.R. § 273.8(e)(11) (excludable by express provision of federal statute). *Id.,* 1979 U.S. Code Cong. & Admin.News at 955. The

Committee further noted that the issue of exclusion arose again during the Senate deliberations on the Home Energy Assistance Act (HEAA).[4] To insure exclusion, the Senate then adopted a voice amendment to the Food Stamp Act excluding "any income attributable to an increase in State public assistance grants which is intended primarily to meet the increased cost of home energy." *Id.*

After stating its preference that amendments to the Food Stamp Act be made under its aegis, the Committee noted that it was incorporating the essence of both the fiscal year 1980 Interior Appropriations Act and the Senate Home Energy Assistance Act amendment into an eleventh income exclusion from the definition of income contained in the Food Stamp Act. The Committee clearly articulated its intent when it said:

> The Committee's intent is that all energy assistance provided households through the use of Federal, State, or local funds flowing from Federal, State, or local *laws that focus on the problem of energy assistance* would be entirely excluded from food stamp income regardless of the form which it takes....

*Id.,* 1979 U.S.Code Cong. & Admin.News at 956 (emphasis added).

The Committee further explained that where energy assistance was provided through laws not specifically dealing with energy assistance, excludability was intended provided that the increase in benefits was in fact energy-assistance related and not simply a general welfare increase which would have occurred even if energy costs were not a factor. In those cases, the benefit should be viewed as income for food stamp purposes.

> Only where energy costs are a but-for cause of the increased payment should the payment be excluded from income,

and, then, only to the extent that the increase is attributable to high heating costs rather than general inflationary conditions.

*Id.* The record herein is devoid of anything that would indicate that the UAPs were made to Orr in an effort to off-set escalating home energy costs.

We believe that Congress intended to exclude assistance received under laws that specifically focus on the problem of energy assistance (e.g., Interior and Related Agencies Appropriations Act; Low–Income Home Energy Assistance Act) or those segregable portions of existing programs which evidence a clear intent to off-set the rising costs of energy. The Section 8 program clearly does not focus on the problem of energy assistance and nowhere in the record or legislative history is there any evidence that UAPs are made for the purpose of specifically providing energy assistance.

We also disagree with Orr's contention that inclusion of UAPs in food stamp income would somehow defeat the purpose of HUD assistance programs. Under Orr's view, the purpose of any federal assistance program would be defeated if assistance from other programs could be considered in determining program eligibility. Had Congress intended this result, it could have easily provided for an all-encompassing exclusion of "any assistance from any law, regardless of the form of payment." Instead, Congress enacted a statutory scheme which operates from the beginning premise that "[h]ousehold income for purposes of the food stamp program shall include all income from whatever source" and excludes only the income from 12 carefully enumerated and defined exceptions. 7 U.S.C. § 2014(d). None of the enumerated exceptions provide an exclusion for the payments received by Orr.

**4.** The HEAA, 42 U.S.C. § 8601 *et seq.,* was repealed in 1981 and replaced by the Low–Income Home Energy Assistance Act (LIHEAA), 42 U.S. C. § 8621 *et seq.* Both Acts authorized the Secretary of Health and Human Services to make grants to the states to assist eligible households to meet the costs of home energy. Section 8624(f) of the LIHEAA specifically excludes payments received thereunder from being considered as income or resources under the food stamp program (a provision not contained in the applicable HUD statutes or regulations).

For the foregoing reasons, the decision of the Appeals Board is affirmed.

CORCORAN, P.J., and JACOBSON, J., concur.