643 A.2d 1038

LAURA MAISONET, APPELLANT, v. NEW JERSEY
DEPARTMENT OF HUMAN SERVICES, DIVISION
OF FAMILY DEVELOPMENT, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 2, 1994—Decided June 15, 1994.

Before Judges PETRELLA, CONLEY and VILLANUEVA.

*Madeline L. Houston* argued the cause for appellant (Passaic County Legal Aid Society, attorneys; *Cary L. Winslow,* on the brief).

*Peter D. Wint,* Deputy Attorney General, argued the cause for respondent (*Deborah Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel, *Mr. Wint,* on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

Prior to and, critical to this appeal, from August 1990 through July 1991, appellant was permitted to rent her basement apartment for $150 a month in exchange for performing janitorial

services for her landlord. Full rent would have been $400. She did not report the $250 difference as income on her food stamp application with the Passaic County Board of Social Services. Ultimately, the Board recalculated her entitlement to food stamps imputing the $250 rental allowance as income, resulting in an assessment of $732 in food stamp overpayment. Additionally, the Board considered her failure to report the rent allowance as income as an intentional program violation pursuant to *N.J.A.C.* 10:87–11.1 to –11.33 and assessed a penalty of $180.

Following an administrative law hearing, the ALJ agreed concluding:

> The rental allowance is not a nonmonetary gain or benefit so as to be excluded from household income. *N.J.A.C.* 10:87–5.9(a)1. Rather, it is a monetary gain and is to respondent's benefit. Respondent paid $250 less a month in her rent because she took care of garbage disposal. It should be noted that examples of nonmonetary or in-kind benefits are meals, clothing, public housing, or produce from a garden. *N.J.A.C.* 10:87–5.9(a)1i. While I recognize that this is not an all-inclusive list, it should be noted that these in-kind benefits are tangible in nature. Not so a rental allowance.

Critical to this conclusion, is the ALJ's characterization of the rent allowance as "earned income, as referred to in two "VIMS Resource Reports" and also in the letter of Mr. Goodman, landlord's accountant, dated October 18, 1991. It is included in employee compensation, that is, all wages and salaries received as compensation for services performed as an employee. *N.J.A.C.* 10:87–5.4(a)1."

We observe, however, that while the VIMS reports referred to by the ALJ appear to reflect that appellant received $750 in wages, those forms are nothing more than Department of Human Services forms filled out by a "preparer," and without explanation as to the source of the information. Moreover, the only direct information from the landlord as to the arrangement between him and appellant is a November 6, 1992 letter from the landlord's accountant that appellant receives $250 per month rent allowance, but that "she is not paid any cash salary" by her landlord, and an earlier October 18, 1991 letter from the same accountant that she receives a monthly rent allowance of $250 for taking care of

garbage disposal. Regardless of whether this allowance was reported by the landlord as wages for accounting purposes, the record shows in fact only that appellant received a reduced rent in exchange for the janitorial services. In effect, she bartered performance of those services for reduced housing.

Despite this, the ALJ concluded the Board's recalculation was correct, as was the assessment of the penalty for an intentional violation. The Director of the Division of Family Development rejected the finding of an intentional program violation. Although not explicitly stated, however, she accepted the conclusion that the $250 rental discount was income and upheld appellant's corresponding food stamp reduction and overpayment assessment.

Appellant appeals and seeks to convert the appeal into a 42 *U.S.C.* § 1983 and 42 *U.S.C.* § 1988 action for injunctive relief and award of counsel fees. We decline to grant such relief but we do reverse the conclusion that the $250 rent discount is income for the purposes of appellant's food stamp allotment.

*I.*

We do not tarry long with appellant's attempt to convert an appeal from an administrative determination into a § 1983 and § 1988 action at the appellate level. To do so would require us to exercise our original jurisdiction pursuant *R.* 2:10–5. We see no basis for doing so here. *N.J. Const.* (1947), Art. VI § V, par. 3 permits our exercise of original jurisdiction "as may be necessary to the complete determination of any cause on review." *See for example Department of Health v. Concrete Specialties, Inc.,* 112 *N.J.Super.* 407, 411, 271 *A.*2d 595 (App.Div.1970) (original jurisdiction exercised to impose statutory penalty for complete determination of the matter where trial court had improperly dismissed the penalty complaint). Original jurisdiction may also be exercised if there exists an emergent matter implicating the public interest. *State v. Rose,* 173 *N.J.Super.* 478, 482, 414 *A.*2d 600 (App.Div. 1980). *See State v. Tumminello,* 70 *N.J.* 187, 192–93, 358 *A.*2d 769 (1976) (original jurisdiction exercised in light of defendant's con-

tinuing physical deterioration); *Market Maintenance Co. v. City of Newark,* 63 *N.J.Super.* 233, 164 *A.2d* 367 (App.Div.1960) (need to promptly resolve public bid dispute warranted exercise of original jurisdiction to consider evidence that was needed to resolve the dispute but not presented to the trial court).

■ We find no basis here for exercising our original jurisdiction to entertain plaintiff's 42 *U.S.C.* § 1983 and § 1988 cause of action. The only issue involved below and thus involved in the appeal concerns the validity of the Division's inclusion of appellant's rent discount as income. No issues concerning 42 *U.S.C.* §§ 1983, 1988 were part of that administrative determination and we, thus, need not exercise original jurisdiction for a complete determination of the appeal. Neither are there any emergent circumstances affecting the public interest or any other circumstances that would warrant such jurisdiction. *Compare Anastasia v. Planning Bd. of West Orange Tp.,* 209 *N.J.Super.* 499, 518, 507 *A.2d* 1194 (App.Div.), *certif. denied,* 107 *N.J.* 46, 526 *A.2d* 136 (1986) (exercise of original jurisdiction to resolve 42 *U.S.C.* § 1983 claim arising from Planning Board's alleged untimely action on site plan approval for proposed development required in light of protracted history of the case, retirement of the trial judge, lack of credibility issues and where the deficiency in the trial judge's decision was simply a lack of findings of facts and conclusions of law).

## II.

■ The food stamp program was developed by Congress in 1964 and has since been amended a number of times. Its purpose is "to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 *U.S.C.* § 2011 (1988). The Act establishes a federally-funded, state administered program to supplement the purchasing power of low-income households. Participating states must administer the food stamp program pursuant to federal guidelines set forth in 7 *U.S.C.* § 2020. Under the

program, final determinations on eligibility and the amount of food stamps issued are made by each state. But "[s]tates must use federal eligibility standards in determining eligibility for food stamps." *Harrington v. Blum*, 483 *F.Supp.* 1015, 1019 (S.D.N.Y. 1979), *aff'd*, 639 *F.*2d 768 (2nd Cir.1980). Any "[s]tate or local policies or practice inconsistent with federal statutes or regulations are invalid." *Ibid.* Thus, 7 *U.S.C.* § 2014(b) provides that

The Secretary shall establish uniform national standards of eligibility ... for participation by households in the food stamp program in accordance with the provisions of this section. No plan of operation submitted by a State agency shall be approved unless the standards of eligibility meet those established by the Secretary, and no state agency shall impose any other standards of eligibility as a condition of participating in the program.

7 *U.S.C.* § 2014(d) sets forth the federal guidelines for ascertaining excludable income for computing food stamp eligibility. These guidelines and specific standards must be included in the state program. Thus, the New Jersey food stamp program must be administered in accordance with the federal law and regulations. *See Meyer v. New Jersey Dept. of Human Services, Div. of Family Development*, 269 *N.J.Super.* 310, 313, 635 *A.*2d 544 (App.Div.1993).

The Food Stamp Act presently defines household income to include "all income from whatever source." 7 *U.S.C.* § 2014(d). Sixteen specific exclusions and several deductions, however, are set forth in the Act. *See* 7 *U.S.C.* § 2014(d). The exclusion at issue here is for "any gain or benefit which is not in the form of money payable directly to a household." 7 *U.S.C.* § 2014(d).

The regulations promulgated by the Secretary of Agriculture in implementing the Act, in pertinent part, define household income as "all income from whatever source excluding only items specified in paragraph (c) of this section." 7 *C.F.R.* § 273.9(b). 7 *C.F.R.* § 273.9(c), further, expressly excludes from income "[a]ny gain or benefit which is not in the form of money payable directly to the household, *including nonmonetary or in-kind benefits, such as meals, clothing, public housing, or produce from a garden, and vendor payments ....*" (Emphasis added).

Although pursuant to 7 *C.F.R.* § 273.9(b)(1), "[a]ll wages and salaries of an employee" are included as income, 7 *C.F.R.* § 273.-9(c)(1)(iv)(A) provides, consistent with the exclusion for in-kind benefits, that "if the employer provides housing to an employee, the value of the housing shall not be considered as income...."

Despite the State's legally incorrect assertion that it is solely New Jersey's guidelines which governs, its regulations are identical. *See N.J.A.C.* 10:87–5.3, *N.J.A.C.* 10:87–5.9(a)1i; *N.J.A.C.* 10:87–5.9(a)2v(2)(A) ("if the employer provides housing to an employee, the value of the housing shall not be counted as income.").

■ Our inquiry here is to determine whether the exclusion for in-kind benefits encompasses the value of appellant's reduced rent. In doing so, we must look to the meaning of "in-kind benefits." Because the State program must, and in fact does, track the federal criteria, we look to the Congressional intent and the Secretary's interpretation. If Congress has spoken on the precise issue or if the Secretary's interpretation is reasonably consistent with the Act, that is the end of our inquiry. *E.g. Chevron, U.S.A., Inc. v. Nature Resources Defense Council, Inc.,* 467 *U.S.* 837, 842–43, 104 *S.Ct.* 2778, 2781–82, 81 *L.Ed.*2d 694, 702 (1984). *And see United States v. James,* 478 *U.S.* 597, 604, 106 *S.Ct.* 3116, 3121, 92 *L.Ed.*2d 483, 493 (1986). *See Baum v. Madigan,* 979 *F.*2d 438, 443, (6th Cir.1992); *Ruhe v. Block,* 507 *F.Supp.* 1290, 1296–97 (E.D.Va.1981), *aff'd, sub nom. Ruhe v. Bergland,* 683 *F.*2d 102 (4th Cir.1982) ("[i]n viewing the legislative history of the Food Stamp Act of 1977, the court has determined that Congress fully intended to give the words it wrote the exact meaning that they appear to have."). *Ruhe v. Block, supra,* 507 *F.Supp.* at 1297.

The language of the Food Stamp Act itself and the federal regulations that we have previously set forth address the value of housing, whether it be public-provided housing or employer-provided housing. In either case, it is considered an in-kind benefit and not includable. The express exclusion of employer-provided housing in 7 *C.F.R.* § 273.9(c)(1)(iv)(A), expressed within the context of provisions concerning wages, directly addresses the

contention that the value of such housing should be considered as wages because it is provided within the employer-employee context.

We can discern no basis for drawing any different conclusion when, instead of receiving free housing, a recipient/employee receives discounted housing. Whether it is the full value or partial value of such "in-kind" benefit, the federal statute and regulations exclude that value as income for food stamp purposes.

Moreover, we think it significant that prior to the 1977 amendments, 7 *U.S.C.* § 2014(b) provided in part that "such standards shall take into account payments in kind received from an employer by members of a household, if such payments are in lieu of or supplemental to household income: Provided further ... in no event shall such value be considered to be in excess of the sum of $25.00 per month." This provision was added to the predecessor 1964 act in 1973 by Pub.L. No. 93–86, § 3(g), 87 Stat. 246 (1973). Prior to this amendment, no in-kind benefits of any type were includable as income. 7 *C.F.R.* § 271.3(c)(1)(ii)(c). *See* discussion of Congressional history in *Compton v. Tennessee Dept. of Public Welfare*, 532 *F.*2d 561, 565 (6th Cir.1976).[1] *And see Id.* at 567 n. 2 (in providing the rationale for the policy of including rent subsidy payments as included income, the Secretary explained that the difference between such then includable housing benefit and an excludable in-kind housing benefit—"A household may also receive benefits that are neither paid direct to the household in cash nor paid in cash to someone else on behalf of the household. Benefits of this type include donated food, clothing, transportation, free use of a house under certain circumstances, and personal services performed free of charge to the household. Such benefits do not

---

[1] *Compton* upheld the inclusion of HUD rent subsidy payments as income for food stamp purposes. The 1977 amendments to the Food Stamp Act were intended to, and did, overrule this result. HUD rent subsidies paid to third parties are no longer included as income. 7 *C.F.R.* § 273.9(c)(1)(i); *see* 1977 *H.R.Rep.* No. 464, 95th Cong., 1st Sess. 32, *reprinted in* 1977 *U.S.C.C.A.N.* 1704, 2008.

represent cash payments and cannot readily and precisely be valued in money by food stamp certification personnel who would be required to assign such values. Because of the difficulties and uncertainties of placing a precise dollar value on these benefits, and the likelihood of inconsistent or inequitable valuations by food stamp certification personnel, the Food and Nutrition Service has followed the policy of generally considering income to be cash payments only, whether such payments are made to or on behalf of a household. The only exception to this policy is an amendment to the Act which requires that the actual value of housing received from an employer, up to a $25 maximum, be considered income.") *Cf. Meyer v. Lyng,* 859 *F.*2d 62, 64 (8th Cir.1988) (congressional exclusion from "income" in the 1977 amendments "suggest Congress sought only to reach those monies which actually represent a net gain to the household...."). *And see* 1977 *H.R.Rep.* No. 464, 95th Cong., 1st Sess. 24, 28–29, *reprinted in* 1977 *U.S.C.C.A.N.,* 1704, 1971, 2001.

We recognize that the exemption for "any gain or benefit which is not in the form of money payable directly to a household" contained in 7 *C.F.R.* § 2014(d)(1) has been described as "intended to cover in-kind benefits of meals, clothing, and shelter, which are administratively difficult if not impossible to assign a value to...." *Meyer, supra,* 859 *F.*2d at 66. Certainly the value of appellant's reduced rent is not administratively difficult to determine. But neither would be the value of employer-provided housing. *And see Ruhe v. Bergland, supra,* 683 *F.*2d at 104 (part of 1977 legislative history suggesting Congressional intent was different from the clear language of the Act does not control).

Finally, we note that where Congress intended in-kind benefits such as food, shelter and clothing to be included as income, it has done so expressly. *See* 42 *U.S.C.* § 1382a(a)(2)(A); 20 *C.F.R.* § 416.1130 (for purposes of determining SSI benefits, the value of in-kind "support and maintenance" is included as unearned income). *See Bormey v. Schweiker,* 695 *F.*2d 164, 168 (5th Cir.), *cert. denied,* 462 *U.S.* 1121, 103 *S.Ct.* 3091, 77 *L.Ed.*2d 1351 (1983);

*White v. Sullivan,* 813 *F.Supp.* 1059, 1066 (D.Vt.1992); *Chamberlain v. Schweiker,* 518 *F.Supp.* 1336, 1338 (C.D.Ill.1981). *See also Colorado Dept. of Social Services v. Davis,* 796 *P.2d* 494, 495–96 (Colo.Ct. of App.1990). *Compare Cooper v. Swoap,* 11 *Cal.*3d 856, 115 *Cal.Rptr. 1,* 524 *P.2d* 97, *cert. denied,* 419 *U.S.* 1022, 95 *S.Ct.* 498, 42 *L.Ed.*2d 296 (1974).

Reversed and remanded for recalculation of appellant's food stamp allotment consistent with this opinion.[2]

---

[2] We observe that even were the value of the rent discount properly includable as income, recalculation of appellant's food stamp entitlement would still be required to include the full rent of $400 as shelter costs and, thus, increasing her entitlement.