683 F.2d 102
 Mildred S. RUHE, Hester Hembry, and Irene O'Brien, on behalf
of themselves and all others similarly situated, Plaintiffs,
v.
Robert S. BERGLAND (now John Block) in his capacity as
Secretary of the United States Department of Agriculture,
and William L. Lukhard, in his capacity as Commissioner of
the Commonwealth of Virginia Department of Welfare, Appellees.
 No. 81-1234.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 3, 1981.
Decided July 19, 1982.
 
 Charles P. Sabatino, Arlington, Va. (Joan DeLise, Legal Services of Northern Virginia, Norfolk, Va., Cynthia G. Schneider, Food Research & Action Center, Washington, D. C., on brief), for appellants.
 Robert W. O'Brien, Third Year Law Student, John A. Rupp, Richmond, Va. (Justin W. Williams, U.S. Atty., George P. Williams, Asst. U.S. Atty., Alexandria, Va., on brief) for appellees.
 Before WIDENER, PHILLIPS and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs challenge the method of the United States Department of Agriculture (USDA) and Virginia in accounting for housing subsidies in the computation of household income for food stamp purposes. The district court granted summary judgment for the defendants, and we affirm.
 
 
 2
 Plaintiffs are residents of Arlington County, Virginia and are participants in the County's Housing Expense Relief Program for Needy Persons. The program, authorized by Va.Code § 63.1-51, is locally funded and provides cash subsidies for eligible individuals and families. Arlington County Code §§ 44-1 to 4. The monthly subsidies are paid directly to the program participants rather than to the landlords or mortgagees. Federally subsidized housing programs also operate in Arlington County. The principal such program is known as the Section 8 Housing Assistance Payment Program, authorized by the Housing & Community Development Act of 1974, P.L. 93-383, 88 Stat. 633, 656, codified at 42 U.S.C. § 1437f. Section 8 payments are made to the landlords or mortgagees rather than directly to the beneficiaries.
 
 
 3
 Plaintiffs also are recipients of federally subsidized food stamps distributed by the Virginia Department of Welfare. Under USDA regulations and, the parties agree, under § 706C of the Virginia Food Stamp Certification Manual, payments made directly to third parties, such as the Section 8 payments, are known as vendor payments and are not included in household income for the computation of food stamp benefits. 7 C.F.R. § 273.9(c)(1)(i) (1981). On the other hand, cash payments made to the beneficiaries, such as the Arlington County rent subsidies, are counted as household income. Id. § 273.9(c)(1)(ii). Plaintiffs challenge the USDA regulation as being inconsistent with the regulation's enabling legislation. Plaintiffs also challenge the USDA and Virginia regulations as being violative of the equal protection clause of the fourteenth amendment and the due process clause of the fifth amendment.
 
 
 4
 The USDA promulgated the challenged regulation in the administration of the Food Stamp Act of 1977, P.L. 95-113, 91 Stat. 958. Section 5(d) of the Act, 7 U.S.C. § 2014(d), provides in applicable part:
 
 
 5
 (d) Household income for purposes of the food stamp program shall include all income from whatever source excluding only (1) any gain or benefit which is not in the form of money payable directly to a household...
 
 
 6
 The district court found that this statute authorized the USDA regulation and that the regulation is not contrary to Congressional intent. Plaintiffs, nevertheless, argue that this statute cannot be read alone and that when interpreted in the context of the entire Food Stamp program, including legislative history, a different interpretation should follow.
 
 
 7
 The starting point in every case involving the construction of a statute is the statute itself. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). In the instant case, the statute clearly excludes from household income those payments "not in the form of money payable directly to a household." 7 U.S.C. § 2014(d)(1). Other than specifically enumerated exceptions, household income includes "all income from whatever source..." The Section 8 payments are not payable directly to a household and thus are within the statute's exclusion. The Arlington County payments are payable directly to the household and thus are outside the exclusion. The Supreme Court has warned against statutory interpretation which is contrary to explicit statutory language.
 
 
 8
 When construing a statute so explicit in scope, a court must act within certain well-defined constraints. If a legislative purpose is explained in "plain and unambiguous language, ... the ... duty of the courts is to give it effect according to its terms." United States v. Lexington Mill & Elevator Co., 232 U.S. 399, 409, 34 S.Ct. 337, 340, 58 L.Ed. 658 (1914).
 
 
 9
 United States v. Rutherford, 442 U.S. 544, 551, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979).
 
 
 10
 The plaintiffs have cited at least one passage from the legislative history of the 1977 Food Stamp Act in the House Committee Report which indicates that at least some legislators disagree with differentiating between direct and third party payments for the computation of household income. U.S. Code Congressional and Administrative News, 95 Congress 1st Session, 1977, p. 2008. With respect to that part of the 1977 Act's legislative history, we believe it does not control principally because the Supreme Court has indicated on several occasions that there is no need for courts to refer to legislative history when the statutory language is clear. TVA v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978); Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949); Gemsco v. Walling, 324 U.S. 244, 260, 65 S.Ct. 605, 614, 89 L.Ed. 921 (1945). The Committee Report referred to is also contradicted by the letter from the Chairman of the Committee referred to below.
 
 
 11
 Plaintiffs maintain, and this is their principal argument, that even if the 1977 legislative history is not considered, the Report of the House Agriculture Committee which accompanies the 1980 Food Stamp Act, P.L. 96-249, 94 Stat. 357, indicates that Congress intended that there should be no differentiation under existing law between direct and third party payments.[1] While the Court has indicated that subsequent legislation by Congress which declares the intent of an earlier statute is entitled to weight in statutory construction,[2] the appellant has offered only a subsequent Committee Report, necessarily of less import, and not a subsequent legislative act.[3] In connection with interpretation of Congress' failure to act legislatively in just such situations as exist here, the Supreme Court has said:
 
 
 12
 But once an agency's statutory construction has been "fully brought to the attention of the public and Congress," and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned. Apex Hosiery Co. v. Leader, 310 U.S. 469, 487-89, 60 S.Ct. 982, 988-89, 84 L.Ed. 1311 (1940).
 
 
 13
 Rutherford, 442 U.S. at 554 n. 10, 99 S.Ct. at 2476 n. 10. In the case now at hand, that the agency's statutory construction has been fully brought before Congress is clearly shown by the letter from the Committee Chairman and by the Committee Report on the 1980 legislation. Although the statute was amended in 1980 in other respects, no amendment to 7 U.S.C. § 2014(d)(1) was made. These facts bring our case squarely within the Rutherford decision, and it must be presumed that the legislative intent has been correctly discerned.
 
 
 14
 Another indication that the 1980 Act's legislative history is not persuasive is this court's decision in Moore v. Harris, 623 F.2d 908 (4th Cir. 1980). In an analogous legislative interpretation problem, we said:
 
 
 15
 While a later Congress cannot dictate what was meant by an earlier Congress, its understanding as to what was meant should be accorded substantial deference by the courts. But it is the intent of the earlier Congress, which enacted the statute, that controls.
 
 
 16
 623 F.2d at 921-22 (footnotes omitted). The decision rejected a 1978 committee construction of a 1969 statute.
 
 
 17
 Finally, in this particular case, we note that while the 1980 Committee Report suggests that Congress intended for the Arlington County program to be treated in the same manner as a Section 8 program and that all that is needed here is a change in administrative regulations, a letter which was written because of the very question here, even to the same county, from the Chairman of the House Agriculture Committee, states, "Change in current policy would, of course, require legislative action." Letter from Rep. Thomas S. Foley to Rep. Joseph L. Fisher (Sept. 7, 1979). All of these factors taken together indicate to us that the statement in the 1980 Committee Report does not accurately reflect the intent of Congress in 1977, especially when Congress' 1977 legislative action is unambiguous and to the contrary.
 
 
 18
 Furthermore, we must disagree with plaintiffs that reliance on legislative history is appropriate because interpretation of the statutory language alone would lead to absurd or unreasonable results. See Rutherford, 442 U.S. at 552, 555, 99 S.Ct. at 2475, 2477. Differentiation between those subsidy programs with third party payments and those with direct payments has reasonable basis. The differentiation arises from the household's control of cash, and the consequent possibility of diversion, in one case, and the total lack of control in the other. There is no statutory requirement in the Arlington County program that the participant actually spend the proceeds of the subsidy on housing. With the Section 8 program, the beneficiary has no such discretion. Similarly, the regulation does not appear to conflict with the overall purposes of the Food Stamp program so as to produce an absurd situation. While there is broad statutory language that the purpose of the Food Stamp program is to "alleviate hunger and malnutrition," 7 U.S.C. § 2011, it cannot be said that the statutory language requiring that household income include "all income from whatever source," conflicts with the goals of the program. Id. § 2014(d).
 
 
 19
 We also reject the appellants' argument that the USDA and Virginia regulations violate due process and equal protection aspects of the Constitution. We note initially that the appellants have not challenged the constitutionality of the enabling legislation, only that of the regulations which track the statute, even though the statute also differentiates between third party and direct payments. Whatever the reason for this seeming inconsistency, we think there is no basis for an equal protection argument. In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1969), the Supreme Court said:
 
 
 20
 In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (31 S.Ct. 337, 340, 55 L.Ed. 369).
 
 
 21
 397 U.S. at 485, 90 S.Ct. at 1161.
 
 
 22
 The classifications made by the USDA and the Virginia Department of Welfare appear to have a reasonable basis. As noted above, a reasonable differentiation between third party and direct payments arises from the recipient's control of cash in one situation and lack of control in the other.
 
 
 23
 While we are not unsympathetic with the plight of the plaintiffs, nevertheless, we are mindful of the Supreme Court's admonition in Rutherford:
 
 
 24
 Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy.
 
 
 25
 442 U.S. at 555, 99 S.Ct. at 2477. It may be that if Arlington County, which is generous in its rent subsidy payments, would alter their form the plaintiffs could receive more food stamps. But that does not make the present form of payment contrary to the Constitution.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The House Report, in part, states:
 (E)xcludability (from Food Stamp income) regardless of the route which the payment takes, should be given to rent or housing subsidies paid pursuant to special State or local rent relief programs, such as the one in existence in Arlington County, Virginia, which covers nearly 1,000 persons, most of them over 55, or similar programs elsewhere.... The Department (of Agriculture) should revise this inequity in its regulations to provide favorable treatment of local, State, and Federal rent relief programs.
 H.R.Rep. 96-788, 96th Cong., 2d Sess., reprinted in (1980) U.S.Code Cong. & Ad.News 843, 957-58.
 
 
 [2]
 E.g., Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (subsequent legislation on broadcast fairness doctrine); FHA v. The Darlington, Inc., 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958) (subsequent legislation concerning use of FHA mortgages)
 
 
 [3]
 The 1980 Act made no changes in Section 5(d)(1) of the Food Stamp Act, 7 U.S.C. § 2014(d)(1)