859 F.2d 62
 102 A.L.R.Fed. 151
 Harold E. MEYER, Individually and on behalf of all others
similarly situated, Appellant,
v.
Richard LYNG, Individually and in his official capacity as
Secretary, U.S. Department of Agriculture; Nancy Norman,
Individually and in her capacity as Commissioner, Iowa
Department of Human Services, Appellees.
 No. 87-2614.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1988.
Decided Oct. 3, 1988.
 
 1
 Kay Delafield, Waterloo, Iowa, for appellant.
 
 
 2
 Daniel W. Hart, Des Moines, Iowa, and Margaret M. Breinholt, Washington, D.C., for appellees.
 
 
 3
 Before HEANEY and MAGILL, Circuit Judges, and LARSON,* Senior District Judge.
 
 
 4
 LARSON, Senior District Judge.
 
 
 5
 Plaintiff Harold E. Meyer brought this class action challenging the standards used to determine eligibility for food stamps, alleging no two-party check which is retained by a creditor to satisfy a debt should be counted as "income." The district court[1] granted summary judgment in favor of defendants the Secretary of Agriculture and the Commissioner of the Iowa Department of Human Services, and plaintiff has appealed. For the reasons discussed below, we affirm.
 
 I. BACKGROUND
 
 6
 Plaintiff is a farmer who obtained an operating loan from the Farmers Home Administration (FmHA). The primary objective of FmHA operating loans is to assist family farm operators to make efficient use of their land and labor, to improve their living conditions, and to improve their economic situation to the extent they can obtain credit elsewhere. See 7 C.F.R. Sec. 1941.2 (1988). FmHA loan money is placed in a non-supervised bank account of the farmer's choosing and may be used for family living needs or farm operations, as specified in the farmer's Farm and Home Plan. Id. Sec. 1941.16. A feasible Farm and Home Plan is required for any loan being made, and must provide for sufficient income to pay both essential farm expenses and family living expenses. Id. Sec. 1924.57(c)(4) and (5).
 
 
 7
 Plaintiff's FmHA loan was secured by a lien on his crops. See id. Sec. 1941.19. In 1984, plaintiff sold his crops for $60,566.00. The check was made payable to FmHA and plaintiff at FmHA's request, and FmHA retained all of the proceeds, releasing only $1,500.00 to plaintiff for the purpose of harvesting his crops.
 
 
 8
 In October, 1985, plaintiff applied for food stamps. The food stamp program is designed to increase the food purchasing power of low-income households by issuing to eligible households coupons or food stamps which can be redeemed for food items at participating retail stores. 7 U.S.C. Secs. 2011 and 2013(a). The Department of Agriculture has promulgated regulations implementing the program, which is administered at the local level by state agencies. Id. Secs. 2014(b) and 2020(a).
 
 
 9
 Eligibility for food stamps and the amount of benefits a household receives are based on the household's "income." Id. Sec. 2014; 7 C.F.R. Sec. 273.9(a) (1988). Household income is broadly defined by statute to include "all income from whatever source," with thirteen specific exclusions. 7 U.S.C. Sec. 2014(d). These exclusions include any gain or benefit which is not in the form of money payable directly to a household, all non-educational loans on which payment is deferred, reimbursements for expenses actually incurred which do not represent a gain to the household, and the cost of producing self-employment income. Id. Sec. 2014(d)(1), (4), (5) and (9). The Secretary's regulations define "income" as "all income from whatever source," including the gross income from a self-employment enterprise, less the costs of doing business. 7 C.F.R. Sec. 273.9(b)(1)(ii) (1988).
 
 
 10
 In determining plaintiff's eligibility for food stamps, the Iowa Department of Human Services projected his 1985 income based upon his 1984 tax return. The Secretary's regulations allow such a procedure so long as there has been no substantial change in the household's circumstances or business operations. Id. Sec. 273.11(a)(1). The Department totaled all farm income reported on plaintiff's Schedule F, the majority of which was the $60,566.00 plaintiff reported for the sale of his crops. Plaintiff's reported farm expenses, including $17,338.00 in interest, were then subtracted,[2] and the result divided by 12 to obtain a monthly farm income of $1,139.50. Other miscellaneous income was then added to obtain a total income of $1,750.25 per month, which exceeded the standards for a three person household.[3]
 
 
 11
 Plaintiff was subsequently informed that his application for benefits was denied. On appeal, a hearing officer recommended recalculation of plaintiff's eligibility based only upon the household's non-crop income, because FmHA's retention of the crop proceeds amounted to a "substantial change" in plaintiff's receipt of income. The Department of Human Services' final decision rejected the hearing officer's recommendation, however, noting that while there had been a change in the way plaintiff received his income, there was no substantial change in the amount of gross income from plaintiff's farming operation.
 
 
 12
 Plaintiff commenced the present action in federal district court, challenging the Department's decision to count the proceeds from his crop sales as "income," even though the proceeds were retained by FmHA. The district court certified a class consisting of all food stamp applicants or recipients who have been denied food stamps or who have had their food stamps reduced because defendants included as income the proceeds of two-party checks made payable to a household member and a third-party creditor when the proceeds of the check were retained by the creditor.[4] On the merits, the court upheld the Secretary's procedure for calculating income, holding that plaintiff's crop proceeds were "income," despite FmHA's exercise of its security interest. This appeal followed.
 
 
 13
 II. ARE PLAINTIFF'S CROP PROCEEDS "INCOME?"
 
 
 14
 Plaintiff class maintains on appeal that any two-party check, the proceeds of which are not retained by the household, should not count as "income" for determining food stamp eligibility. We reject so broad a contention.
 
 
 15
 Congress plainly meant in its definition of "income" to "cast the broadest possible net, including all forms of what has been found to constitute income." H.R.Rep. No. 464, 95th Cong., 1st Sess. 24, reprinted in 1977 U.S.Code Cong. & Admin.News 1704, 1971, 2001. At the same time, the statutory exclusions from "income" suggest Congress sought only to reach those monies which actually represent a net gain to the household. Thus, while a student loan is excluded from income to the extent it is used for tuition and mandatory school fees or is earmarked by the grantor for education expenses, the remainder is counted as "income." See 7 U.S.C. Sec. 2014(d)(3) and (5); Shaffer v. Block, 705 F.2d 805, 810, 813 (6th Cir.1983).
 
 
 16
 Similarly, in determining self-employment income, the statute excludes the cost of producing that income. 7 U.S.C. Sec. 2014(d)(9). Our Court has recently held that while foster care maintenance payments are self-employment income under the statute, such payments equal the cost of providing care to foster children, and hence there is no net "gain" to the household for purposes of calculating food stamp eligibility. Murray v. Lyng, 854 F.2d 303, 306 (8th Cir.1988).
 
 
 17
 In evaluating whether monies should be classified as "income," courts have pragmatically recognized "the practicalities of the situation," upholding the Secretary's decisions when the principle of including only net gain has been satisfied. See, e.g., Biggs v. Lyng, 823 F.2d 15, 20 (2d Cir.1987). In Biggs, for example, the Second Circuit ruled state Interim Assistance benefits could properly be treated as "income" instead of as a loan, even though the funds must be repaid once a recipient is found eligible for the federal Supplemental Security Income (SSI) program. SSI recipients receive a lump sum retroactive award, which is then used to repay the state for the Interim Assistance benefits. While the SSI payments count as "income," the retroactive award does not, and hence the "gain" to the recipient was accurately reflected in the Secretary's decision to count Interim Assistance payments as "income." Id.
 
 
 18
 Consistent with the statutory scheme in this case, plaintiff's FmHA loan was not counted as income when it was received. See 7 U.S.C. Sec. 2014(d)(4). Although neither plaintiff's loan application nor his Farm and Home Plan is in the record, FmHA regulations provide the loan proceeds may be used for family living expenses and farm operating expenses. The loan itself is not earmarked solely for business expenses. See 7 C.F.R. Secs. 1941.16 and 1924.57(c)(4) and (5) (1988). After receiving the loan and using the proceeds, plaintiff sold his crop, and, after subtracting his allowable expenses, recognized a "gain" of $13,674.00.
 
 
 19
 Conceding he experienced some "gain" from the crop sale, plaintiff claims the test of "income" should not be whether there has been a gain, but rather should be whether the household has control over the funds for the household's separate use, benefit or disposal. The statutory definition is broadly worded, however, and was intended by Congress to reach "all forms of what has been found to constitute income," unless the funds fall within one of the specific exclusions. H.R.Rep. No. 464, 95th Cong., 1st Sess. 24, reprinted in 1977 U.S.Code Cong. & Admin.News 1971, 2001. Moreover, in discussing an exclusion for certain in-kind and vendor payments, Congress specifically indicated that money payable to a household but diverted to a third party, even by way of a court-ordered garnishment, would be counted as income. Id. at 34, reprinted in 1977 U.S.Code Cong. & Admin.News at 2011. That Congress viewed assignments and garnishments of a wage earner's salary as "income" compels rejection of plaintiff's argument limiting "income" to those funds over which the household exercises exclusive control.
 
 
 20
 Plaintiff's FmHA loan included funds available to meet family living expenses. The crop proceeds generated from the loan which exceeded plaintiff's cost of production were counted as "income." The proceeds produced from the loan are thus treated the same as payments from federal programs in situations where the payment is over and above a recipient's actual expenses. Congress described its rationale for including this "gain" as income in the case of other federal payment programs as follows:
 
 
 21
 [T]he Committee ... views its broad-gauged definition of income as rational and equitable, since it intends to measure income as [broadly] as possible to be fair to all recipients as well as to the tax-paying public and not simply by reference to purchasing power available for food. A household member's travel allowance that is not reimbursement for expenses is as much income from this point of view as wages earned to cover commuting costs regardless of whether the allowance or the wages can practically be employed to pay for needed food.
 
 
 22
 Id. at 27, reprinted in 1977 U.S.Code Cong. & Admin.News at 2004.
 
 
 23
 Finally, we note plaintiff listed the crop proceeds as "income" on his tax return, conceding they do represent income for tax purposes, despite FmHA's exercise of its security interest. For all of these reasons, we conclude plaintiff's crop proceeds fall within the broad category of "income" as defined in the Food Stamp Act.
 
 
 24
 We thus must consider whether the proceeds fit within any of the specific statutory exclusions. At the outset, we reiterate that plaintiff does not argue the proceeds equal his cost of doing business, which is excluded from income under 7 U.S.C. Sec. 2014(d)(9), nor does he allege they represent a reimbursement for expenses actually incurred which does not represent a gain to his household, excludable under Sec. 2104(d)(5).
 
 
 25
 Plaintiff does claim the proceeds fall within exclusion Sec. 2014(d)(1), which exempts "any gain or benefit which is not in the form of money payable directly to a household." 7 U.S.C. Sec. 2014(d)(1). The legislative history of this section reveals it was intended to cover in-kind benefits of meals, clothing, and shelter, which are administratively difficult if not impossible to assign a value to, as well as to so-called "vendor payments," such as government subsidies for housing or child care for low-income people. Congress expressed its concern that inclusion of these latter payments would discourage participation and defeat the purposes of these programs, forcing the poor to choose in some instances between adequate housing and food stamp assistance. H.R.Rep. No. 464, 95th Cong., 1st Sess. 30-34, reprinted in 1977 U.S.Code Cong. & Admin.News 1971, 2006-2010.
 
 
 26
 Congress specifically stated, however, that
 
 
 27
 any money payable to a household, but diverted from it to a third party, either of the household's own free will (e.g., an arrangement with an employer to deduct the rent and mail it to the landlord) or involuntarily (e.g., court-ordered garnishment of wages) would be counted as income and would not be excluded.
 
 
 28
 Id. at 35, reprinted in 1977 U.S.Code Cong. & Admin.News 2011.
 
 
 29
 Plaintiff relinquished control over his crop proceeds by giving a security interest in the proceeds to the FmHA as a condition of his loan. The plaintiff class includes any individual who receives a two-party check and diverts the proceeds, for whatever reason, to the other party. Under these circumstances, the proceeds are more analogous to the monies "payable to a household" envisioned by Congress as falling within the term "income," than to the in-kind or other government benefits designed to assist the poor, which are excluded under Sec. 2014(d)(1). We therefore agree with the district court that the proceeds at issue are not excludable as a "gain or benefit which is not in the form of money payable directly to a household." See 7 U.S.C. Sec. 2014(d)(1).
 
 
 30
 We are not without sympathy for the plight of the named plaintiff herein, who harvested his crop against the advice of his attorney so that he could pay rent to an elderly couple who depended upon the rental income, and who now finds it difficult to buy sufficient food. To the extent his FmHA loan or the crop proceeds he received represent actual farm expense, they should be excluded from his household income in calculating the household's eligibility for food stamps. On the basis of this record, however, we cannot say the proceeds are excludable as income simply because the FmHA exercised its security interest in them.
 
 III. CONCLUSION
 
 31
 For all of the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa
 
 
 [2]
 All expenses except depreciation were subtracted. Depreciation is not counted as a cost of production for food stamp purposes. 7 C.F.R. Sec. 273.11(a)(4)(ii)(D) (1988). Plaintiff does not challenge the failure to deduct depreciation in this case
 
 
 [3]
 Plaintiff's household consisted of himself, his wife, and his daughter. The miscellaneous income added to plaintiff's farm income consisted of monthly rental income and unemployment benefits received by plaintiff's daughter. Inclusion of these items as part of plaintiff's household income is not challenged in this appeal
 
 
 [4]
 The class was limited to individuals affected by defendant's policy on or after September 12, 1985. See 7 U.S.C. Sec. 2023(b) (retroactive relief limited to one year prior to filing of complaint)