Robin BAUM, et al., Plaintiffs,

v.

Clayton YEUTTER, et al., Defendants.

No. C88–234A.

United States District Court,
N.D. Ohio, E.D.

June 29, 1990.

Robert Harold Bonthius, Jr., Peter M. Iskin, Legal Aid Soc. of Cleveland, Cleveland, Ohio, for Robin Baum, Emma Detillion, Sheila Lawson.

Kathleen Ann Sutula, Michael Anne Johnson, Alexander A. Rokakis, Office of The U.S. Atty., Cleveland, Ohio, for Clayton Yeutter.

Alan P. Schwepe, Office of The Asst. Atty. Gen., Columbus, Ohio, for Roland T. Hairston.

Kent M. Graham, Office of The Pros. Atty., Ravenna, Ohio, for John J. Witkosky.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION

Before the Court are the parties' cross motions for summary judgment as to all counts of the plaintiffs' complaint. To summarize, plaintiffs seek review of the Secretary of Agriculture's practice whereby the Secretary counts as income for the purposes of determining food stamp benefits [1] reimbursement payments the plaintiffs receive for home utilities expenses pursuant to the Housing Act, 42 U.S.C. § 1401, et seq., as administered by the Department of Housing and Urban Development ("HUD").[2]

Plaintiffs, as public housing tenants, pay "rent" in the amount of 30% of the tenant's adjusted monthly gross income. Plaintiffs' public housing rent, whatever that figure is

---

1. The Food Stamp Act of 1977 is codified at 7 U.S.C. § 2011 et seq, as amended.

2. This action was originally brought against then Secretary of Agriculture Richard E. Lyng, the Director of the Ohio Department of Human Services Patricia K. Barry and the Director of the Portage County Department of Human Services John J. Witkowsky. The state and county defendants aid the Secretary of Agriculture in

administration of the Food Stamp Program. As Lyng's successor, Secretary Clayton Yeutter has been automatically substituted as a defendant under Fed.R.Civ.P. 25(d)(1). Because the substitution has no substantive effect on the result, this opinion simply employs the term "Secretary" throughout. When appropriate, the Opinion will refer to the defendants collectively as "the defendants."

determined to be, automatically includes a predetermined amount for reasonable utilities consumption, known as a utilities allowance. Plaintiffs pay no more than 30% of their adjusted monthly gross income for rent, which includes the predetermined amount for utilities.

Unlike other public housing tenants, plaintiffs pay some or all of their costs for utilities directly to the utility suppliers. For reasons described *infra*, the amount plaintiffs pay directly for utilities exceeds the total monthly amount plaintiffs' owe to the local Public Housing Authority ("PHA"), in essence plaintiffs' landlord. The PHA reimburses plaintiffs the difference between plaintiffs' rent obligation and the utilities allowance in the form of a check made payable to plaintiffs.

When public housing tenants receive an allowance for utilities expenses and the utilities are paid by the PHA, the Secretary of Agriculture excludes the benefit tenants receive from household income for purposes of determining food stamp awards. However, the Secretary counts the "utility reimbursement payments" plaintiffs receive as household income. The calculation of food stamp benefits are based on plaintiffs' relative levels of household income: the lower the income level, the more food stamps the household is entitled to receive and vice versa. Because these utility reimbursement payments are included in plaintiffs, income for purposes of determining food stamp awards, plaintiffs receive a smaller award of food stamps than they would receive if the income was excluded.

Plaintiffs' first claim is that the reimbursements for amounts paid by a tenant for utility costs should be excluded from the plaintiffs' household income pursuant to one of several exclusions for determining household income listed in 7 U.S.C. § 2014(d), specifically, § 2014(d)(1), § 2014(d)(5) or § 2014(d)(6).

Plaintiffs next allege that the government has violated the Brooke Amendment to the Federal Housing Act of 1937 and seeks a remedy based upon two separate legal theories, a *Cort v. Ash* [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)] constitutional tort theory and a claim under 42 U.S.C. § 1983.

Finally, plaintiffs claim that the government has violated the Administrative Procedure Act, 5 U.S.C. § 701–706 by crediting plaintiffs with income for their utility reimbursement monies.

Plaintiffs seek declaratory and injunctive prospective relief in addition to retrospective relief in the amount of benefits denied to them due to what plaintiffs claim are inflated determinations of household income. For the reasons that follow, the plaintiff's motion for summary judgment is granted, and the defendants' motion for summary judgment is denied.[3]

## II. FACTUAL BACKGROUND

Although the facts are not in dispute, the following background will be helpful to an understanding of the nature of the claims and defenses.

### A. *The Federal Housing Subsidy.*

Plaintiffs live in federally assisted rental housing in Portage County and Pike County, Ohio. According to what is commonly known as the Brooke Amendment, lower income families living in federally assisted public housing are charged rent based upon a formula that takes into consideration a household's income. 42 U.S.C. § 1437a(a). As a practical matter, plaintiffs are required to pay monthly rent in the amount of 30 percent of a household's monthly adjusted income. The amount of HUD's contribution is equal to the difference between the contract rental and the amount the household is required to pay. 42 U.S.C. § 1437f(c)(3). Included as "rent" are the reasonable amounts paid for utility services ("utilities") which are defined to include the costs for electricity, gas, heating fuel, water and sewage service, and trash collec-

---

**3.** The Court's grant of summary judgment in favor of the plaintiffs does not resolve the remaining issues of class certification and the applicable remedy. The Court has scheduled a hearing on those issues and grants the parties leave to file supplemental briefs on the remaining issues. *See, infra* at 853.

tion. 42 U.S.C. § 1437f(c)(1); 24 C.F.R. § 965.472 (1989). The local PHA determines a community-wide utility allowance ("UA"), and adds that figure to each public housing tenant's rent, irrespective of the actual amount spent on utilities consumption, although a household that spends more than the UA is usually required to pay for the cost of the excess usage. 24 C.F.R. § 965.470–482 (1989). The UA is established at a level equal to "the monthly cost of a reasonable consumption of such utilities and other services for the unit by an energy-conservative household of modest circumstances." 24 C.F.R. § 913.102 (1989).

Prior to 1981, the utilities in multi-resident apartment buildings were metered on an aggregate basis, and individual households did not pay for their own utilities separate from the monthly rent which included an allowance for utilities. In 1981, HUD began requiring local PHA's to install individual utility meters so that each household would pay all or a part of the monthly utility expense. As it now stands, three different methods for collection and payment of utilities in public housing exist. First, in older public housing units, the PHA may purchase the utilities directly and add the monthly costs of the utilities to the tenant's rent obligation, without use of a UA. The household pays only its Brooke Amendment rent obligation subject to additional flat fee charges for certain appliances. 24 C.F.R. § 965.471(b); 965.477(b) (1989).

Second, the PHA again purchases the utilities directly. A UA is determined for the housing project and that figure is added to a tenant's monthly rent owed without regard to whether or not a tenant may in fact have used less of the allocated utilities amount. A tenant's utility usage is monitored by a "checkmeter," which assesses a tenant a surcharge if the tenant exceeds the allocated amount for utilities. The surcharge is a payment owed in addition to the Brooke Amendment rent charge. 24 C.F.R. § 965.470–472 (1989).

The third utility payment method gives rise to the claims before the Court. An individual meter for utility consumption is installed at the dwelling unit and the resident purchases the utility services *directly* from the utility supplier. Again, the tenant is granted a certain utility allowance ("UA"). Rather than examining a tenant's actual utility expenses in a given month, the PHA assumes that a tenant has spent the entire UA for the month. Because of this assumption, for many low income public housing families the figure represented by the UA is used as a credit against rent owed to the PHA and the tenants merely pay the residual. However, plaintiffs' income is so low that the UA covers plaintiffs' rent and results in an additional amount owed by the PHA to the tenant, defined as the "utility reimbursement." 24 C.F.R. § 813.102 (1989). The PHA reimburses the plaintiffs the difference between the monthly rent owed and the UA. Appendix I, which is reproduced from the recent Third Circuit decision in *West v. Bowen*, 879 F.2d 1122, 1129–30 (3rd Cir. 1989), compares two otherwise similar tenants except that one tenant lives in a public housing unit with group metering and the utilities are paid by the local PHA while the other tenant pays for utilities directly and receives a utility reimbursement payment from the local PHA.

## B. *The Food Stamp Program*

The Secretary of Agriculture currently includes utility reimbursements as "income" for computation of food stamp eligibility. The calculation of food stamp benefits are based on plaintiffs' relative levels of household income: the lower the income level, the more food stamps the household is entitled to receive and vice versa. 7 U.S.C. § 2017(a). In a phrase reminiscent of the Internal Revenue Code, household income is defined to include "all income from whatever source." Income eligibility limits for food stamp benefits is based upon a household's net income. In order to determine a household's net income, certain amounts of income are simply not counted or "excluded" pursuant to 7 U.S.C. § 2014(d). Further reductions in the amount of net income are accomplished by various deductions, including, when appli-

cable, the household's "excess shelter deduction." 7 U.S.C. § 2014(e). If income is not properly excluded from a determination of household income, then a recipient is denied the benefit of food stamps the recipient would have received given the correlation between lower net income leading to an increased award of food stamps.

### C. The Utilities Allowance and the Issue of Whether Plaintiffs are Reimbursed for Utilities They did not Purchase

For the purpose of determining whether the utility reimbursement payment is income to plaintiffs, an important factual issue is whether plaintiffs in a given month actually purchase utilities in an amount that equals or exceeds the utility reimbursement payment. The Secretary concedes that plaintiffs currently spend more on utilities than they receive by way of the reimbursement payment. Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment and Reply Brief in Support of Motion for Summary Judgment, at 1–3 (Docket # 114). For purposes of the motions for summary judgment, the Court assumes that the reimbursement payment received by plaintiffs is less than or equal to plaintiffs' actual utility expenses.

However, the Secretary posits that there may be tenants whose reimbursement checks exceed the amount spent on utilities, thereby giving those tenants a cash credit for utilities they did not purchase. Appendix II offers examples of how the UA and the utility reimbursement work in three different fact settings: (1) the UA equals the rent obligation (The Jones Family); (2) the UA is greater than the rent obligation and actual utility costs are greater than the reimbursement payment (The Smith Family); and (3) same as No. 2, except actual utility costs are less than the reimbursement payment (The Smith Family Modified). The plaintiffs concede that if a public housing tenant *would* receive more by way of a utility reimbursement payment than they spend in a given month, then the amount in addition to actual expenditures is income. Plaintiffs' Summary Judgment Reply Brief, at 5–7 (Docket # 115). Thus, for purposes of the summary judgment motions, the Court addresses only the factual situation that occurs where a public housing resident receives a utility reimbursement payment that does not exceed the actual amount spent on utilities in a given month.[4]

### III. DISCUSSION

#### A. Summary of Existing Case Law.

Only two prior cases have addressed the issue of whether federal utility reimbursement payments constitute income for the purposes of determining food stamp awards. In *West v. Bowen*, 879 F.2d 1122 (3rd Cir.1989), the plaintiff class of federal housing residents received utility reimbursement checks and sought to enjoin the Secretary of Agriculture from including the amount of the reimbursements as income for the purpose of determining their food stamp benefits. The Third Circuit reversed the district court's grant of summary judgment to the Secretary and entered judgment in favor of the plaintiff class. The Court of Appeals held that the income was excluded pursuant to one of the eleven exclusions in 7 U.S.C. § 2014(d), specifically, 7 U.S.C. § 2014(d)(11). The statute provides that household income shall include "all income from whatever source excluding only ... (11) any payments or allowances made for the purpose of providing energy assistance (A) under any Federal law...." § 2014(d)(11). After examining the legislative history, the Court concluded that Congress intended to exclude all forms of federal energy assistance, including HUD's utilities allowance and reimbursement amounts, because Congress chose to prepare the statutory exclu-

---

4. In examining Appendix II, and defendants' modification, the Court questions defendants' assertion that a tenant with a $100.00 UA could spend only 15% of the allotted amount, which is $15.00, on utilities for a month. The Court notes that the UA is determined for an "energy-conservative" household and many of the utilities that are part of the UA are necessary to sustain an adequate standard of living, e.g., electricity, water, gas, and garbage collection. 42 C.F.R. § 965.472 (1989).

sion without a specific list of special federal energy assistance programs. *Id.* at 1131. The Court added that the exclusion should be read to avoid constitutional entanglement and that a contrary reading of the statute would implicate equal protection concerns due to the "arbitrary disadvantage" the class suffered because of the happenstance that they resided in an apartment with individual utility meters. *Id.* at 1132. In the case pending before this Court, plaintiffs have not brought a claim pursuant to 7 U.S.C. § 2014(d)(11).

The Third Circuit in *West* did not consider the plaintiffs' other claims that the reimbursement checks were excluded from income pursuant to 7 U.S.C. § 2014(d)(5) and (6). The district court in *West* granted the Secretary's motion for summary judgment on both claims. *West v. Bowen,* No. 84-3883, 1987 WL 28346 (E.D.Pa. December 17, 1987). § 2014(d)(5) excludes from income "reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household...." § 2014(d)(6) excludes from income "moneys received and used for the care of a third-party beneficiary who is not a household member." The lower court reasoned that § 2014(d)(5) did not apply because the implementing regulation, 7 C.F.R. § 273.9(c)(5), stressed that rent and normal household living expenses are not excluded. *Id.* at 27. The third party beneficiary exclusion of § 2014(d)(6) was found not to apply to the utility reimbursements because even though the utilities were paid by plaintiffs on behalf of the PHA, the reimbursements were not "received and used for the care and maintenance of a third party beneficiary who is not a household member." *Id.* at 30–31.

In the unreported decision of *Mitchell v. Block,* No. 82–3297–2 (D.S.C. June 22, 1983), the district court granted the Secretary of Agriculture's motion for summary judgment, finding that the Secretary correctly counted plaintiffs' utility reimbursement payments as income for the purpose of determining their food stamp allocation. The plaintiff class in *Mitchell* claimed that the energy assistance exclusion, § 2014(d)(11), excluded the utility reimbursement payments from consideration of available income for the purpose of determining food stamp benefits. The district court, in a decision issued prior to the Third Circuit's decision in *West,* determined that the HUD's utility reimbursements were designed to provide housing assistance, not energy assistance, and therefore the reimbursement did not qualify under the exclusion.

B. *Plaintiffs' Claim that Utility Reimbursement Payments are Excluded from Income Pursuant to 7 U.S.C. § 2014(d)(1).*

Although plaintiffs assert both statutory and constitutional challenges, the Court will first consider whether the Secretary of Agriculture properly determined that utility reimbursement payments do not fall within the exclusion to income pursuant to 7 U.S.C. § 2014(d)(1). "A Court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional questions." *Califano v. Yamasaki,* 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) (citations omitted).

To analyze an agency's interpretation of a statute it administers, the Supreme Court has stated that the reviewing Court must consider the following questions:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise the question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is

whether the agency's answer is based on a permissible construction of the statute. *Chevron U.S.A., Inc. v. National Resources Defense Counsel, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Additionally, the amount of weight placed upon an agency's interpretation is lessened when the interpretation "does not require special knowledge within the agency's field of expertise." *Lynch v. Lyng*, 872 F.2d 718 (6th Cir.1989) (citing *In re Oliver Elam, Jr., Co.*, 771 F.2d 174 (6th Cir.1985)).

The § 2014(d)(1) exclusion provides that household income includes all income from whatever source derived except "any gain or benefit which is not in the form of money payable directly to a household...." [5] For the following reasons, after applying the *Chevron* analysis to the case at bar, the Court finds that although the plain language of the statute is somewhat ambiguous, Congress clearly intended to exclude the UA from income and likewise intended to exclude HUD's utilities assistance benefits paid in the form of monetary reimbursements to the extent that the reimbursement represents actual utilities expenses incurred by the plaintiffs.

Both parties argue that the plain language of § 2014(d)(1) and evidence of congressional intent supports their respective views concerning whether or not the statute excludes the utility reimbursement payments from income. The Secretary argues that the analysis of the plaintiffs' claims begins and ends with the fact that plaintiffs receive a gain or benefit in the form of a monetary payment paid to the household. "The fact that these monies are intended to be used for their utility bills, [sic] does not obviate the fact that the money is payable to the household." Defendants Brief in Opposition, at 6 (docket # 114). Plaintiffs claim that utility reimbursement checks are part of the federal housing subsidy and the only reason that plaintiffs receive a "monetary" payment is because they first paid the utility provider. Plaintiffs argue that whether the PHA or the household pays the utilities, the same subsidy is involved.

According to this view, the reimbursement check represents an indirect, non-monetary benefit which merely takes the form of a monetary payment and the plain language of the statute excludes such benefits.

Initially, the Court finds that the statute's plain language does not resolve the issue of what constitutes a direct payment of a gain or benefit. In *Ruhe v. Bergland*, 683 F.2d 102 (2nd Cir.1982), the Court held that a county's direct payments to a household to be used for housing assistance constituted income while excluding from income federal housing subsidies paid directly to the PHA. The Court found that examination of legislative history was unnecessary because the plain and unambiguous language of 7 U.S.C. § 2014(d)(1) excludes only non-monetary payments. Benefits paid directly to a household left the future use of the funds to the discretion of the recipient. The Second Circuit reasoned that Congress clearly did not intend for the exclusion to apply to direct monetary payments because the households did not need to account for the use of the funds. *Id.* at 105.

Although the Court in *Ruhe* found it unnecessary to consider evidence of congressional intent apart from the language of the statute, the *Ruhe* Court was faced with a different fact setting. The county assistance payments in *Ruhe* were paid directly to the household to be used on future housing costs. Unlike the benefits in *Ruhe*, plaintiffs are being reimbursed for expenditures rather than direct payment of benefits, which leaves the plaintiffs no discretion about how to spend the benefit. Plaintiffs must either make the expenditure or face the termination of utility services. *See*, Plaintiffs' Motion for Summary Judgment, Marshall Affidavit, Appendix A–32, docket # 94.

The Secretary's regulations applying § 2014(d)(1) do not clarify the issue before the Court. The regulations offer the following examples of nonmonetary or in-kind benefits: meals, clothing, public housing, or produce from a garden and vendor payments. 7 C.F.R. § 273.9(c)(1) (1990). Ven-

---

**5.** 7 U.S.C. § 2014(d)(1) is subject to an exception not applicable to the present proceedings.

dor payments are money payments that are not payable directly to the household but are paid to a third party for a household expense. *Id.* Rent subsidies paid by HUD are recognized as vendor payments when they are paid directly to the third party landlords or the local PHA. 7 C.F.R. § 273.9(1)(i) (1990). However, "[p]ayments in money that are not made to a third party, but are *made directly to the household,* are counted as income and are not excluded as a vendor payment...." 7 C.F.R. § 273.9(1)(iii) (1990) (emphasis added). The legislative history concerning vendor payments is at odds with the Secretary's regulation. *See* H.R.Rep. No. 95–464, 95th Cong., 1st Sess. 32, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1704, 1971, 2009, wherein the House Report states: "No rent subsidies or supplements paid or payable to third parties could be treated as income, including sums paid to households under firm instructions for their transmission to landlords." Simply stated, the issue as yet unresolved is whether or not the utilities reimbursement payment is "money payable directly" as a benefit.

The Secretary seizes upon plaintiffs' receipt of a monetary payment, but does not explain how a reimbursement check is a benefit "payable directly" to the household given the fact that plaintiffs are being reimbursed for utility expenses. The plaintiffs characterize the underlying benefit as non-monetary housing assistance which, it cannot be denied, takes the form of a monetary reimbursement check. The Court is not persuaded that either version of the plain language of the statute offered by the parties demonstrates that the utilities reimbursement is or is not a "direct" payment of a gain or benefit. However, the statutory language plus the available evidence of congressional intent leads the Court to conclude that Congress intended to exclude the utilities reimbursement payment to the extent that the reimbursement represents actual utilities expenses incurred by the plaintiffs.

With regard to § 2014(d)(1), the most relevant statement of congressional intent is contained in the House Report to the Food Stamp Act of 1977, P.L. 95–113, 91 Stat. 958, 962 (1977), which includes a discussion of the statutory exclusions to income later codified at 7 U.S.C. § 2014(d). H.R.Rep. No. 95–464, 95th Cong., 1st Sess. 32, *reprinted in* 1977 U.S.Code Cong. & Admin. News 1971, 1998–2011 ("the Report"). The Secretary relies upon portions of the Report as well as two Court of Appeals decisions discussing § 2014(d)(1) to support his position that Congress did not intend to exclude the utility reimbursement payments from income. Initially, the Report states Congress' use of the phrase "all income from whatever source derived" was meant to "cast the broadest possible net, including all forms of what has been found to constitute income." Report at 24, *reprinted at* 2001.

The Secretary cites the "analogous" case of *Meyer v. Lyng,* 859 F.2d 62 (8th Cir. 1988). In *Meyer,* plaintiff farmer obtained a loan from the Farmers Home Administration (FmHA), secured by a lien on the plaintiff's crops. The entire amount of the year's crop proceeds was made paid directly to both the FmHA and the plaintiff. The FmHA then released only a small amount of the proceeds to plaintiff. The Secretary counted the entire amount of the crop proceeds as income. Plaintiff sued, arguing that "no two party check which is retained by a creditor to satisfy a debt should be counted as 'income.'" *Meyer,* 859 F.2d at 63. The Eighth Circuit affirmed the district court's decision to grant summary judgment in favor of the Secretary. The Secretary offers the following quotation from the Report quoted in *Meyer* wherein the Court of Appeals found that the crop proceeds were not excludable under § 2014(d)(1):

Congress specifically stated however, that

any money payable to a household, but diverted from it to a third party, either of the household's own free will (e.g., an arrangement with an employer to deduct the rent and mail it to the landlord) or involuntarily (e.g. court ordered garnishment of wages) would be counted as income and would not be excluded. Id.

at 35, reprinted in 1977 U.S.Code Cong. & Admin.News 2011.

*Id.* at 66.

However, the *Meyer* Court, in the paragraph immediately preceding the above listed quotation, summarized Congress' intention in adopting the § 2014(d)(1) exclusion:

The legislative history of this section reveals it was intended to cover in-kind benefits of meals, clothing, and shelter, which are administratively difficult if not impossible to assign a value to, as well as to so-called "vendor payments," such as government subsidies for housing or child care for low income people. Congress expressed its concern that inclusion of these latter payments would discourage participation and defeat the purposes of these programs, forcing the poor to choose in some instances between adequate housing and food stamp assistance. H.R.Rep. No. 464, 95th Cong., 1st Sess. 30–34, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1971, 2006–2010.

*Id.*

In citing *Meyer,* the Secretary focuses on the fact that although plaintiff "enjoyed no real benefit from the proceeds of the crop," the Secretary of Agriculture was still entitled to include the entire amount of the proceeds as income. Defendants' Brief in Opposition, at 7. However, the Court finds that plaintiffs' claims are more analogous to the exclusion of government housing program subsidies than the plaintiff farmer's claim against the Secretary for finding that assigned crop proceeds constituted income. Indeed, the *Meyer* Court found that it was Congress' intention to exclude such housing benefits from income, although Congress treated assignment and garnishment of potential income differently.

The Secretary also cites to the Court the case of *Blinzinger v. Lyng,* 834 F.2d 618 (7th Cir.1987). In *Blinzinger,* the plaintiff class of food stamp recipients, all residents of Indiana, and, *inter alia,* the State of Indiana, filed suit against the Secretary of Agriculture to oppose the Secretary's practice of including in income for the purpose of determining food stamp benefits the general assistance payments that Indiana

pays to its low income residents. The Court of Appeals upheld the district court's decision to grant the Secretary's 12(b)(6) motion based upon an *exception* to the § 2014(d)(1) exclusion which in effect directs the Secretary to include state assistance payments in income but to exclude federal assistance payments. 7 U.S.C. § 2014(k). The Secretary argues that *Blinzinger* and § 2014(k) stands for the general principle that Congress intended to include government assistance payments in income for the purpose of determining food stamp benefits. The Court disagrees with the Secretary's argument. The reason Congress found it necessary to treat state assistance payments as income was to "insure nationwide uniformity in its food stamp eligibility requirements" due to the varying levels of assistance offered by the states. *Blinzinger,* 834 F.2d at 622–23, citing the legislative history of § 2014(k), S.Rep. No. 145 at 234, 1985 U.S.Code Cong. & Admin.News 1103 at 1900.

A much stronger basis for finding Congress' intention to exclude the utility reimbursement payments is found in the Report itself. The Report discusses the § 2014(d)(1) in-kind gains or benefits and vendor payments exclusion at pp. 30–34 of the Report, *reprinted at* pp. 2006–2010. The legislative history states Congress' intent to exclude HUD's rent subsidies and explicitly disapproved of a Sixth Circuit decision wherein the Court included HUD's rent subsidy payments in the definition of income for food stamps. *Compton v. Tennessee Dept. of Public Welfare,* 532 F.2d 561, 565 (6th Cir.1976). "The Committee bill, if enacted, would clarify this situation and effectively invalidate *Compton* for the future … No rent subsidies or supplements paid or payable to third parties could be treated as income, including sums paid to households under firm instructions for their transmission to landlords." *Report* at 32, *reprinted at* 2008. The House Report states why HUD subsidies should not be included in income in order to determine food stamp benefits:

If housing vendor payments, such as rent supplements, were to be counted as

income, nearly every family living in subsidized housing would face major reductions in their food stamp benefits. This would undercut the whole purpose of various housing acts and of the Food Stamp Act by making families lose the ability to obtain a more nutritious diet simply because their landlord was receiving a subsidy payment from HUD.

Report at 32, *reprinted at* 2008.

The House Report concludes that it would be unjust to include public housing subsidies as income for the purpose of determining food stamp benefits:

> Such income attribution would also be unfair to low income persons living in public housing, especially the elderly. Many poor elderly persons live in federally subsidized housing for the elderly or in public housing for the elderly constructed by State or local governments.
>
> They would either be removed from the program outright or have their food stamp benefits substantially cut, even though the "value" of other housing is money they never see or ever have available for food.
>
> These persons live in the public housing units only because the units are inexpensive. If they had to pay more, they would not be able to afford to live there. To act as if these households' disposable incomes are somehow substantially increased because they live in public housing, and to severely cut their food stamp benefits as a result, would be unjust. It should be noted that many persons living in such housing do not live there free— often they pay 25 percent of their income for the housing. They must live in these dwelling units because so little low income housing is available, and hence they have nowhere else to go.

*Id.* at 33–34, *reprinted at* 2010.

Given this legislative history, the Court finds that the Secretary has unreasonably construed § 2014(d)(1). Congress never intended to include the federal housing subsidy for utilities assistance as income and the language of the statute does not support the Secretary's reading. The Court finds that counting the reimbursement check as income misconstrues the phrase "any gain or benefit which is not in the form of money payable directly to a household" in that a reimbursement payment is not payable "directly" to the plaintiffs. Plaintiffs are *paid back,* not paid directly, the difference between their rent obligation and the UA, a sum which arises after the PHA determines that plaintiffs' rent is lower than the amount allotted for the UA *and* plaintiffs actually incur and pay for the amounts represented by the reimbursement check. The Secretary's construction unreasonably elevates the form of a monetary payment over the substance of the utilities allowance which is unequivocally part of a federal housing subsidy and a sum intended by Congress to be excluded from income for the purpose of determining food stamp benefits. In a case involving the Securities and Exchange Commissions' interpretation of what constitutes a security in the context of pension plans, the United States Supreme Court described the deference to afford an agency's determination of a statute it administers:

> It is a commonplace in our jurisprudence that an administrative agency's consistent, longstanding interpretation of the statute under which it operates is entitled to considerable weight.... This deference is a product both of an awareness of the practical expertise which an agency normally develops, and of a willingness to accord some measure of flexibility to such agency as it encounters new and unforeseen problems over time. But this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.

*International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979).

The Court finds that the traditional deference owed to the Secretary's determination of what constitutes income for purposes of the food stamp program yields where, as here, the Secretary's interpretation fails to honor the clear meaning of the statute "as revealed by its language, purpose and history." *Id.*

Finally, the Secretary cannot deny that utilities are included in HUD' definition of housing subsidies and if a household's PHA paid the same utilities, the Secretary would not include the benefit to a household as income. As in *West v. Bowen*, the exclusions to income contained in § 2014(d) must be construed to avoid possible equal protection concerns in cases like the present case where no reasonable distinction may be drawn between the housing subsidy afforded group metering public housing tenants and plaintiffs. "It is a long standing canon of construction that a statute should be read, whenever possible, to avoid constitutional entanglements." *West*, 879 F.2d at 1132, citing *Califano v. Yamasaki*, 442 U.S. at 693, 99 S.Ct. at 2553–54.

The Court finds that the Secretary unreasonably failed to exclude from income pursuant to 7 U.S.C. § 2014(d)(1) the utility reimbursement payments for the purpose of determining food stamp benefits. Therefore, plaintiffs' motion for summary judgment based upon the claim that the Secretary wrongfully includes the utilities reimbursement check in income for the purpose of determining food stamp benefits is granted and the Secretary's motion for summary judgment is denied.[6]

## IV. CLASS CERTIFICATION AND REMEDY

The Court also has for its consideration plaintiffs' motion for class certification, to which the defendants have tendered their opposition. Plaintiffs seek to represent the class comprised of

all Ohio residents of federally assisted rental housing who receive or will receive utility reimbursement payments and whose food stamp allotments have been, are, or will be reduced, terminated, or denied because their utility reimbursement payments have been, are, or will be counted as income for purposes of the Food Stamp Program.

Plaintiffs' Motion for Class Certification, at 1 (Docket # 37).

By previous Order, the Court informed the parties that the class certification issue would be decided as needed following resolution of the parties competing motions for summary judgment (Docket # 109).

With regard to a remedy, plaintiffs' seek declaratory and injunctive prospective relief in addition to retrospective relief in the amount of benefits denied to plaintiffs based upon the Secretary's miscalculation of plaintiffs' household income.

The Court herein does not address the remaining issues of class certification and the appropriate remedy to award plaintiffs based upon the Court's grant of summary judgment in their favor. The Court finds that a hearing on the remaining two issues would be helpful and schedules a hearing for July 25, 1990 at 8:30 a.m. The Court grants the plaintiffs leave until July 11, 1990 to file supplements to their existing motions for class certification and motion for summary judgment as it relates to the issue of an appropriate remedy. Defendants shall be granted leave to respond to plaintiffs supplementary materials until July 18, 1990.

## V. CONCLUSION

Accordingly, the plaintiffs' motion for summary judgment is granted and the defendants' motion for summary judgment is denied. The Court grants the parties leave to supplement their briefs on the issues of class certification and an appropriate remedy, issues the Court will resolve following the July 25, 1990 hearing.

IT IS SO ORDERED.

---

6. Due to the disposition above, the Court need not consider the plaintiffs' remaining claims based upon 7 U.S.C. § 2014(d)(5) and (6), the *Cort v. Ash* constitutional tort theory and a claim under 42 U.S.C. § 1983 based upon the alleged violation of the Brooke Amendment to the Federal Housing Act of 1937, and the plaintiffs' claim that the government has violated the Administrative Procedure Act, 5 U.S.C. § 701–706 by crediting plaintiffs with income for their utility reimbursement monies.

Reproduced from *West v. Bowen,* 879 F.2d 1122, 1129–30 (3rd Cir.1989):

The following example assumes a monthly utility bill of $50.00, a monthly "utility reimbursement" of $50.00, and a monthly adjusted gross income of $100.00 with a maximum rent therefore of $30.00:

Group Metering

| | | |
|---|---|---|
| Utility Costs | –0– | (included in rent). |
| Rent | $30. | |

Total out of pocket expense for Rent + Utilities = $30.

Individual Metering

| | | |
|---|---|---|
| Utility Costs | $50 | (The resident pays this with his/her own money). |
| Rent | –0– | (Because public housing rent includes utilities and the total of the two cannot exceed 30% of a tenant's income). |
| Utility Reimbursement | $50 | (Average utility costs of residents citywide, this sum is credited against resident's rent). |
| Utility Rebate | $20 | (Difference between Utility |

Reimbursement and the maximum rent + utilities a resident can be charged, i.e., $50–$30 = 20. This "utility rebate" is received by resident and added to adjusted gross income for purposes of food stamp benefit calculation by USDA).

## APPENDIX II: INDIVIDUAL PAYMENT OF UTILITIES

| | (1) Jones family | (2) Smith family |
|---|---|---|
| Adjusted monthly income ("AMI") | $500 | $250 |
| Total tenant payment (30% of AMI) | 150 | 75 |
| Utility allowance * | −100 | −100 |
| | 50 | (−25) |
| Brooke Amendment rent | $ 50 | $ 0 |
| Utility reimbursement payment | $ 0 | $ 25 |

Plaintiffs' Motion for Summary Judgment and Brief in Opposition to Defendants' Motion for Summary Judgment, at 12–13, n. 3 (docket # 94).

Using the same example, defendants offer the following modification of the Smith family's utility expenses:

| | Jones family | (3) Smith family (Modified) |
|---|---|---|
| Adjusted monthly income ("AMI") | $500 | $250 |
| Total tenant payment (30% of AMI) | 150 | 75 |
| Utility allowance * | −100 | −100 |
| | 50 | (−25) |
| Brooke Amendment rent | $ 50 | $ 0 |
| Utility reimbursement payment | $ 0 | $ 25 |
| Actual utility cost | | $ 15 |
| Net gain to Smith household | | $ 10 |

Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment and Reply Brief in Support of Defendants' Motion for Summary Judgment, at 2, n. 1 (docket # 114).

\* In the examples, the UA is subtracted from the rent obligation because the PHA assumes that the tenant has already incurred the cost represented by the UA by paying the monthly utilities.